UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Paris Shoots, individually and on behalf of the Proposed Rule 23 Class,<br><br>Plaintiff,<br><br>v.<br><br>iQor Holdings US Inc.,<br><br>Defendant. | Court File No. _____<br><br>**DEFENDANT'S NOTICE OF REMOVAL** |

Defendant iQor Holdings US Inc. ("Defendant" or "iQor"), by its attorneys and pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, hereby remove this action from the District Court of Hennepin County, Minnesota to the United States District Court for the District of Minnesota.  This action may be removed because this Court has jurisdiction over the Complaint pursuant to the Class Action Fairness Act of 2005 ("CAFA").  In furtherance of this Notice of Removal, Defendant alleges the following:

1. On February 9, 2015, Plaintiff filed a civil action in the Minnesota District Court of the County of Hennepin.  True and correct copies of all process, pleadings, and orders served upon Defendant in the state court action, including the Complaint, Summons and Certificate of Service, are attached to the declaration of Kristen Husby as Exhibit A.  Husby Decl. ¶ 3.

2. Defendant received service of the Summons and Complaint on January 21, 2015.  Husby Decl. ¶ 3.

I.      **CLASS ACTION FAIRNESS ACT OF 2005**

3.      This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of class actions.  *See* 28 U.S.C. § 1453.

4.      This action was brought by a single putative representative on behalf of a proposed class of individuals.  Compl. ¶¶28-36.  As such, this matter is a purported class action as that term is defined under CAFA.  28 U.S.C. § 1332(d)(1)(B) and 28 U.S.C. § 1453.

5.      This action originally could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter was brought as a class action, there are at least 100 putative class members, diversity of citizenship exists between the putative plaintiff class and Defendant, the alleged amount in controversy exceeds, in the aggregate, $5,000,000 exclusive of interest and costs, and the limited home state and local controversy exceptions to CAFA are inapplicable. Removal is therefore proper under 28 U.S.C. §§ 1332(d), 1446 and 1453, as explained in greater detail below.

   A.   **There Are at Least 100 Putative Class Members**

6.      Under CAFA, this Court has jurisdiction only if there are at least 100 putative class members.  28 U.S.C. § 1332(d)(5)(B).

7.      Plaintiff purports to bring this action on behalf of "[a]ll individuals employed by Defendant as contact center agents, customer care agents, collections agents, new business agent [*sic*], student loan agents, sales agents, or other similar job titles in Minnesota at anytime within three years prior to the filing of this Complaint." Compl. ¶ 28.  There currently are 529 individuals employed by Defendant in Minnesota

in the listed positions.  Husby Decl. ¶ 5.  From January 20, 2012 to the present, there have been 2,105 individuals employed by Defendant in Minnesota in the listed positions during the class period.  *Id*.  Therefore, there are a sufficient number of putative class members for removal under CAFA.

      B.      **Diversity of Citizenship Exists**

8.      Plaintiff is a resident of the State of Minnesota.  Compl. ¶ 6.

9.      For diversity purposes, a corporation is a citizen of (1) the state under whose laws it is organized; and (2) the state of its "principal place of business." *Capitol Indem. Corp. v. Russellville Steel Co.,* 367 F.3d 831, 835 (8th Cir. 2004); 28 U.S.C. § 1332(c)(1).  The Eighth Circuit applies the "total activity" test for determining a corporation's principal place of business.  *Capitol Indem. Corp.*, 367 F.3d at 836.  The "total activity" test considers the location of all corporate activities to determine a corporation's principal place of business, including the location of the corporation's decision-makers, the location of overall control of the corporation, and the location of the corporation's production and service activities.  *Id*.

10.     Defendant is, and was at all relevant times, incorporated in the State of Delaware.  Husby Decl. ¶ 4.  Defendant's principal place of business is in St. Petersburg, Florida: its headquarters are located in St. Petersburg, Florida, its corporate officers and decision-makers work in St. Petersburg, Florida, and its executive and administrative functions are performed out of St. Petersburg, Florida.  Husby Decl. ¶ 4.

11. Based on the foregoing, sufficient diversity exists under CAFA because at least one putative class member (Plaintiff Paris Shoots) is a citizen of Minnesota and the sole defendant is not a citizen of Minnesota.  *See* 28 U.S.C. § 1332(d)(2)(A).

    **C.**    **The Amount in Controversy Requirement Is Satisfied**

12. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).

13. Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Report, S. REP. 109-14, at 42.

14. The Complaint does not specify the amount of damages sought by Plaintiff and the putative class.  When a plaintiff fails to plead a specific amount of damages, the removing litigant "must prove by a preponderance of the evidence that the amount in controversy exceeds" the jurisdictional threshold.  *In re Minnesota Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).

15. Defendant denies Plaintiff's factual allegations and denies that Plaintiff or the class he purports to represent is entitled to any relief whatsoever.  However, based on Plaintiff's allegations and prayer for relief, the amount in controversy more likely than not exceeds CAFA's $5,000,000 threshold, as explained below.

16.     According to the Complaint, Plaintiff purports to represent a class of "[a]ll individuals employed by Defendant as contact center agents, customer care agents, collections agents, new business agent [*sic*], student loan agents, sales agents, or other similar job titles in Minnesota at any time within three years prior to the filing of this Complaint." Compl. ¶ 28.

17.     The sole claim that Plaintiff alleges in the Complaint is a violation of Minnesota Payment of Wages Act ("MPWA") § 181.101, which provides, *inter alia*, that "[e]very employer must pay all wages earned by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals." Minn. Stat. § 181.101. *See also* Compl. ¶¶ 37-46. Plaintiff alleges that he and the putative class have suffered various damages under Minnesota law, including unpaid wages under the MPWA, available civil penalties, prejudgment interest, attorneys' fees, and costs. Compl. ¶ 46, Prayer for Relief.

18.     Although styled as a single claim for unpaid wages and penalties under the "Wages: How Often Paid" provision of the MPWA, for the reasons described below, the allegations in the Complaint actually assert two claims: a claim for failure to pay timely pay wages under the MPWA, <u>and</u> a claim for failure to pay the minimum wage for all hours worked, which is governed by the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21, *et seq*.

19.     First, citing to Minn. R. 5200.0120, Plaintiff asserts that "[u]nder Minnesota law, the minimum wage must be paid for all hours worked," and alleges that "Plaintiff and the proposed Rule 23 class were not paid for all of their hours worked

5

because of Defendant's practice of logging CCAs out of the TimeQey system when their computers were idle for two or more minutes." Compl. ¶¶ 19-20.  A claim for minimum wages under Minnesota law arises, if at all, under Minn. Stat. § 177.25.

20.     Second, Plaintiff alleges that he and the putative class "were or are employees of Defendant within the meaning of Minn. Stat. § 177.23" and that Defendant "was or is Plaintiff's and the proposed Rule 23 Class's employer within the [sic] Minn. Stat. § 177.24…"  Compl. ¶¶ 38, 39.  Those definitions of "employee" and employer" are part of the MFLSA.

21.     Third, Plaintiff alleges that "Defendant also failed to pay Plaintiff and the proposed Rule 23 class for the time they spent on bona fide rest breaks."  Compl. ¶ 21.  This contention is based on Minn. R. 5200.0120(1).  Compl. ¶ 44.  However, the statutory authority from which Minn. R. 5200.0120 is derived is Section 177.28 of the MFLSA, not the MPWA.  *See* Minn. R. 5200.0120 ("Statutory Authority: MS s 177.28; 181A.12").  Moreover, the Minnesota Supreme Court has found that "together, [the MFLSA and MPWA] provide a comprehensive statutory scheme for wages and payment in Minnesota and should be interpreted in light of each other."  *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 617 (Minn. 2008).  "While the MFLSA addresses minimum wage and hour standards, the PWA addresses how often wages must be paid and establishes penalties for wages that are paid late."  *Id*.

22.     Finally, Plaintiff alleges that Defendant's purported conduct was "willful."  Compl. ¶¶ 5, 26.  The concept of "willfulness" is found in the MFLSA, not the MPWA.  *See* Minn. Stat. 177.27(7).

6

23. Thus, for purposes of determining the amount in controversy, the proper analysis includes the damages available under both the MFLSA and MPWA.

24. Plaintiff's claims and requested damages demonstrate that the amount in controversy in this class action exceeds $5 million. Specifically, Plaintiff seeks to recover unpaid wages on behalf of himself and the putative class. Compl., Prayer for Relief ¶ B. In the Complaint, Plaintiff alleges that for the pay period beginning on May 16, 2014, and ending on May 31, 2014, he worked a total of 85.22 hours, but was only paid for 79.14 hours, for a total of 6.08 hours unpaid. Complaint ¶ 24. Defendant pays its employees at the Minnesota contact center semi-monthly. Husby Decl. ¶ 6. Based on a review of the quarterly staffing reports for CCAs at iQor's Minnesota contact center for the period of January 1, 2012, to the present, on average, there have been approximately 584 full-time CCAs working at any given time at Defendant's contact center in Minnesota each year since 2012. Husby Dec. ¶ 8. Assuming Defendant failed to pay each putative class member an average of six hours per pay period (in line with Plaintiff's allegations), allowing for a rate of pay equal to the 2012 minimum wage of $6.15 per hour, and using the average number of full-time employees throughout the class period, Plaintiff's minimum wage claim reflects an amount in controversy of $1,551,571.20 for unpaid wages ($6.15 x 6 hours per pay period x 72 pay periods x 584 CCAs).[1]  Plaintiff also alleges that Defendant's conduct was willful (Complaint ¶¶ 5, 26), and the MFLSA permits an award of "an additional equal amount as liquidated damages." *See* Minn. Stat.

---

[1] The minimum wage in Minnesota increased to $8.00 per hour, effective August 1, 2014 (Minn. Stat. 177.24), which increases the amount in controversy for Plaintiff's minimum wage claim.

§ 177.27(8). Thus, the total amount in controversy from Plaintiff's minimum wage claim alone is at least $3,103,142.40.

25. Plaintiff also alleges that he and the putative class are entitled to recover all available civil penalties, attorneys' fees and costs. Compl., Prayer for Relief ¶¶ C, G, and H. The MPWA provides that an aggrieved employee is entitled to recover the employee's average daily earnings for a period not exceeding 15 days. *See* Minn. Stat. § 181.101. *See also* Minn. Stat. § 181.171 ("An employer who is found to have violated the above sections [including § 181.101] is liable to the aggrieved party for the civil penalties or damages provided for in the section violated"). CCAs at Defendant's Minnesota contact center earn an average of $12.77 per hour and typically are scheduled to work eight hour shifts. Husby Decl. ¶ 7. 1,987 of the putative class members performed services for iQor for at least 15 days. *Id.* at ¶ 5. Assuming each of those 1,987 putative class member is entitled to receive the full, 15-day penalty for a violation of Minn. Stat. § 181.101, the total amount in penalties would be $3,044,878.80 ($12.77 average hourly rate x 8 hours per day x 15 days x 1,987 putative class members).

26. Thus, Plaintiff's claims easily meet the amount in controversy threshold. Adding the $3,103,142.40 amount in controversy for Plaintiff's MFLSA claim and $3,044,878.80 for the MPWA claim yields a total amount in controversy of $6,148,021.20. Adding attorneys' fees, as authorized by both the MFLSA and MPWA, further increases the amount in controversy.

### D. CAFA's Limited Exceptions to Federal Jurisdiction Are Inapplicable

27. CAFA provides for two primary exceptions to the exercise of CAFA jurisdiction. These exceptions are generally referred to as the "home-state exception" and the "local controversy" exception. *See* 28 U.S.C. § 1332(d)(4)(A-B). Plaintiff bears the burden of proof as to the applicability of CAFA's exceptions. *Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1107 (D. Minn. 2009); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153-54 (3d Cir. 2009); *Hart v. Fed Ex Ground Package Sys., Inc.*, 457 F.3d 675, 679-80 (7th Cir. 2006). Moreover, Congress intended the exceptions to be interpreted "narrow[ly]," with the district court resolving all doubts "in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. No. 109-14, at 42.

28. Plaintiff cannot establish the necessary requirements for application of either the home-state exception or the local controversy exception to CAFA, as explained below.

#### 1. CAFA's Home-State Exception Is Inapplicable

29. To invoke the home-state exception to CAFA jurisdiction, Plaintiff bears the burden of proving that (A) two-thirds or more of the members of the proposed class are citizens of the State in which the action was originally filed; and (B) all primary defendants are citizens of the State in which the action was originally filed. 28 U.S.C. § 1332(d)(2)(B); *Moua*, 613 F. Supp. 2d at 1109.

30. The term "primary defendant" includes "any person who has substantial exposure to significant portions of the proposed class in the action, particularly any

9

defendant that is allegedly liable to the vast majority of the members of the proposed class . . . ." *Moua*, 613 F. Supp. 2d at 1109 (quoting Senate Judiciary Report, S. RFP. No. 109-14, at 43). Moreover, Congress intended that "primary defendants" "be interpreted to reach those defendants who are the real 'targets' of the lawsuit, i.e., the defendants that would be expected to incur most of the loss if liability is found." *Moua*, 613 F. Supp. 2d at 1108 (quoting Senate Judiciary Report, S. REP. No. 109-14, at 43).

31.  Because Defendant is the sole defendant in this lawsuit and is not a citizen of Minnesota, Plaintiff cannot establish the requirements for application of CAFA's home-state exception.

### 2.  CAFA's Local Controversy Exception Is Inapplicable

32.  To invoke the local controversy exception to CAFA, Plaintiff bears the burden of proving that (A) greater than two-thirds of the members of the proposed class are citizens of the State in which the action was originally filed; (B) at least one defendant who is a citizen of the State in which the action was originally filed is a "significant" defendant; (C) the principal injuries alleged were incurred in the State in which the action was originally filed; and (D) during the 3-year period preceding the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons. 28 U.S.C. § 1332(d)((4)(A),

33.  Plaintiff cannot invoke the local controversy exception because the only defendant and, therefore, the only significant defendant from whom Plaintiff seeks relief, is not a citizen of Minnesota.

## II.     ALL OTHER PREREQUISITES FOR REMOVAL ARE SATISFIED

34. This Notice of Removal is filed within thirty days of service of the initial Summons and Complaint upon Defendant, and therefore it is timely under 28 U.S.C. §§ 1446(b) and 1453.

35. Plaintiff filed this action in the District Court of Hennepin County, Minnesota. Removal to this Court is proper under 28 U.S.C. § 1441(a) because this Court embraces the location where the action was filed.

36. Defendant will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the District Court of Hennepin County, as required under 28 U.S.C. § 1446(d).

37. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present argument in support of its position that this case is removable.

WHEREFORE, Defendant iQor Holdings US Inc., desiring to remove this case to the United States District Court for the District of Minnesota, requests that the filing of this Notice of Removal shall effect the removal of the suit to this Court.

Dated: February 20, 2015.    Respectfully submitted,

JACKSON LEWIS P.C.

*s/Brian T. Benkstein*
Gina K. Janeiro (#0345337)
Brian T. Benkstein (#0325545)
225 South Sixth Street
Suite 3850
Minneapolis, MN 55402
Tel:  612-341-8131
Fax:  612-341-0609
JaneiroG@jacksonlewis.com
Brian.Benkstein@jacksonlewis.com

Sari M. Alamuddin (*pro hac vice* pending)
Stephanie L. Sweitzer (*pro hac vice* pending)
Kevin F. Gaffney (*pro hac vice* pending)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL  60601-5094
Tel: +1.312.324.1000
Fax: +1.312.324.1001
salamuddin@morganlewis.com
ssweitzer@morganlewis.com
kgaffney@moreganlewis.com

ATTORNEYS FOR DEFENDANT
iQOR HOLDINGS US INC.

4820-3878-5058, v.  1