UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PARIS SHOOTS, JONATHAN BELL,
MAXWELL TURNER, TAMMY HOPE and
PHILLIP OSTROVSKY on behalf of
themselves and the Proposed Rule 23 Classes,
and others similarly situated,

                Plaintiff,

    v.

IQOR HOLDINGS US INC.,

                Defendant.

Court File No. 0:15-cv-00563-SRN-SER

**DEFENDANT'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION
FOR JUDGMENT ON THE PLEADINGS**

---

On the Memorandum of Law:

Gina K. Janeiro (#0345337)
Brian T. Benkstein (#0325545)
JACKSON LEWIS P.C.
225 South Sixth Street
Suite 3850
Minneapolis, MN 55402

Sari M. Alamuddin (admitted *pro hac vice*)
Stephanie L. Sweitzer (admitted *pro hac vice*)
Kevin F. Gaffney (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601-5094

*Attorneys for Defendant iQor Holdings US Inc.*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT…………………………………………………………………….......3

I.      STANDARD OF REVIEW……………………………………………………….3

II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR STRAIGHT TIME PAY UNDER THE VARIOUS STATE "PROMPT PAYMENT" STATUTES."………………………………………………………………..4

      A.      The Prompt Payment Statutes Do Not Create a Substantive Right to Wages, but Instead Govern the Timing of Wage Payments ........................ 4

      B.      Plaintiffs Have Not Alleged an Independent, Substantive Legal Right to the Claimed Straight Time Wages ................................................ 8

III.    COUNTS II, V, VI AND VII FAIL TO STATE CLAIMS FOR UNPAID OVERTIME COMPENSATION UPON WHICH RELIEF CAN BE GRANTED……..20

CONCLUSION…………………………………………………………………..23

## INTRODUCTION

In this case, Plaintiffs contend that they and putative class members "were not paid for all of their hours worked as required by contract and by statute because of Defendant's practice of deducting idle time recorded in TimeQey from their weekly hours worked."  Am. Compl. ¶ 43.  They further contend that they were not properly compensated for all of the time they spent on their rest breaks.  *Id.*, ¶ 44.  They assert straight time claims under various state prompt payment statutes: the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. § 181.101, the New York Labor Law ("NYLL"), N.Y. Lab. Law § 191, the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15, and Article 7 of the Arizona Wage Act, A.R.S. 23-350, *et seq.*  They also assert overtime claims under the New York Minimum Wage Act, N.Y. Lab. Law. § 650, *et seq.*, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01, *et seq.* ("Ohio Wage Act"), Article 7 of the Arizona Wage Act, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Plaintiffs fail to state any claim upon which relief can be granted and, therefore, judgment on the pleadings is appropriate.

To begin, the prompt payment statutes on which Plaintiffs base their straight time claims are timing statutes that "do[] not create a substantive right to the recovery of a particular wage."  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836-37 (Minn. 2012).  *See also infra* at 6-7.  Rather, to recover under these statutes, Plaintiffs must "establish an independent, substantive legal right, separate and distinct from [the statutes] to the particular wage claimed."  *Id.*

Thus, for their straight time claims to be viable, Plaintiffs must plausibly allege an independent statutory or contractual right to that time.  They cannot do so here.  There is no independent statutory right to the claimed unpaid straight time, because, even if Defendant failed to pay Plaintiffs for idle or break time, there is no statutory right to straight time wages where "the total weekly wage paid by the employer meets the minimum weekly requirements of the statute . . . " *Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir. 1986).  *See also Bailey ex rel. v. Border Foods, Inc.*, No. 09-1230 (RHK/AJB), 2009 WL 3248305, at *2 (D. Minn. Oct. 6, 2009).

Here, Plaintiffs have not alleged that they were paid below the minimum wage.  To the contrary, the pleadings establish that Plaintiffs were paid more than the state minimum wage in any given workweek.  Because it is apparent from the pleadings that Plaintiffs cannot establish a violation of the state minimum wage statutes, Plaintiffs have failed to show an independent statutory right to the claimed unpaid straight time.

Likewise, Plaintiffs have failed to plausibly allege a contractual right to the claimed unpaid idle or break time.  Plaintiffs' contractual claims, which are premised exclusively on an hourly rate set forth in their respective offer letters for at-will employment, are too vague to give rise to a viable claim.  In fact, elsewhere in their First Amended Complaint, Plaintiffs plead facts that *negate* any contractual agreement – such as a policy *not* to pay for idle or break time.  Am. Compl. ¶¶ 34, 39-41.

Because Plaintiffs have failed to plausibly allege a separate, independent right to straight time wages, their claims under the prompt payment statutes, in turn, fail as a

2

matter of law.   Thus, Plaintiffs have failed to state a claim upon which relief can be granted as to Counts I, II, IV and VI of the First Amended Complaint and dismissal of these claims is appropriate.

The federal and state overtime claims asserted by Plaintiffs Turner, Hope and Ostrovsky likewise fail to state a claim upon which relief can be granted.   Plaintiffs' overtime claims lack several key factual allegations, including their work schedules, the approximate number of overtime hours they allegedly worked, and the type of work purportedly performed during the unpaid time.   An ever-growing number of recent cases have dismissed similarly vague and factually unsupported complaints for unpaid overtime.   Thus, the Court should dismiss the overtime claims contained in Counts III, V, VI and VII of the Amended Complaint as well.

## **ARGUMENT**

### IV.   **STANDARD OF REVIEW.**

Judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."   *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)).   The court "view[s] all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party."   *Poehl*, *supra* (citing *Syverson v. FirePond, Inc*., 383 F.3d 745, 749 (8th Cir. 2004)).   A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard used to decide a motion to dismiss under Rule

12(b)(6).  *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (D. Minn. 2008) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).  However, when ruling on a motion for judgment on the pleadings, the court considers the pleadings, matters of public record, materials attached to the pleadings, and materials part of the record of the case. *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1087 (D. Minn. 2000) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Rule 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless discovery and fact-finding" and eliminate baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Thus, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citation omitted).  That is to say, if it appears from the face of the complaint that the plaintiff cannot prove a set of facts that would entitle him to the relief sought, the court should dismiss the plaintiff's claims.  *See id.* at 570.  Such is the case here.

## V.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR STRAIGHT TIME PAY UNDER THE VARIOUS STATE "PROMPT PAYMENT" STATUTES.

### A.    The Prompt Payment Statutes Do Not Create a Substantive Right to Wages, but Instead Govern the Timing of Wage Payments.

4

Plaintiffs' straight time claims are based on the various state statutes governing the *timing* of wage payments.   *See* Minn. Stat. § 181.101 (providing, *inter alia*, that employers "must pay all wages earned by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals."); N.Y. Lab. Law § 191(d) ("A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."); Ohio Rev. Code § 4113.15 ("Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof…"); A.R.S. § 23-351 ("Each employer in this state shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees."). Plaintiffs seek to force a square peg into a round hole.

To begin, Plaintiffs do not contest the *timing* of wage payments; rather they contend that the paychecks they did receive did not account for all hours worked.  Am. Compl. ¶¶ 7-8, 10, 12.  Such allegations do not give rise to viable claims under the prompt payment statutes.  *See, e.g., Thomas v. Meyers Assoc., L.P.*, 39 Misc. 3d 1217(A), 2013 WL 1777483, at *6 (N.Y. Sup. Apr 18, 2013) (unpublished) ("Plaintiff cannot bootstrap a timeliness claim onto a failure to pay claim.  The latter is actionable because it is a violation of statutorily required payment, and not of the parties' agreement.

5

Defendants did not agree to pay overtime or minimum wage, then fail to pay either according to an agreed-upon schedule. They simply failed to pay."); *Jara v. Strong Steel Door, Inc.*, 20 Misc. 3d 1135(A), 872 N.Y.S. 2d 691 at *14 (N.Y. Sup. Aug 15, 2008) (finding plaintiffs' claim that their employer failed to pay them agreed-upon wages for straight-time and overtime was not actionable under N.Y. Lab. Law § 191 because they did not allege frequency of payment violations). *See also infra* at 6-7.

Furthermore, courts interpreting these "prompt payment" statutes have specifically held that they do not create a substantive right to the recovery of wages. Rather, to recover under the statutes, plaintiffs must establish a *separate* substantive legal right to the wages claims. For example, as the Minnesota Supreme Court has repeatedly held, the MPWA:

> does not create a substantive right to the recovery of a particular wage. Instead, [it] is a *timing* statute that requires prompt payment of wages actually earned. To recover under the statute *the employee must establish an independent, substantive legal right, separate and distinct from [the MPWA] to the particular wage claimed.*

*Caldas*, 820 N.W.2d at 836-37 (citation omitted) (emphasis added). *See also Milner v. Farmers Ins. Exch.,* 748 N.W.2d 608, 617 (Minn. 2008) ("the PWA addresses how often wages must be paid and establishes penalties for wages that are paid late"); *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 125 (Minn. 2007) (in a case alleging failure to pay wages at termination, the Minnesota Supreme Court held that the MPWA "is a timing statute, mandating not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee") (emphasis in original).

The same is true with respect to the New York, Ohio and Arizona statutes.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010) ("Labor Law § 191 by its terms only involves the timeliness of wage payments, and *does not appear to afford to plaintiffs any substantive entitlement to a particular wage*") (emphasis added); *Jara*, 20 Misc. 3d 1135(A), at *12 ("the gravamen of plaintiffs' complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive.  To the extent prevailing wages are sought to be recovered, Labor Law § 191 is an inappropriate vehicle for such recovery."); *Lutz v. Huntington Bancshares Inc.*, No. 2:12-cv-01091, 2014 WL 2890170, at *20 (S.D. Ohio June 25, 2014) (granting employer's motion for summary judgment on Ohio Prompt Pay Act claim because it was dependent on plaintiff's failed overtime claim); *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2013 WL 3580309, at *17 (S.D. Ohio July 11, 2013) (stating that the viability of plaintiff's claim under the Ohio Prompt Pay Act "hinges on the viability of the minimum wage and overtime claims"); *Rogers v. Brauer Law Offices*, PLC, No. CV-10-1693-PHX-LOA, 2012 WL 426725, at *8 (D. Ariz. Feb. 10, 2012) (holding that plaintiff's Arizona prompt payment claim failed because his FLSA overtime claim failed); *Rose v. Wildflower Bread Co.*, No. CV09-1348-PHX-JAT, 2011 WL 196842, at *1 (D. Ariz. Jan. 20, 2011) (noting that A.R.S. § 23-351 "require[s] that employees receive their 'wages' in a timely fashion").

Thus, in order to state a claim under each of these statutes, Plaintiffs must plead an "independent, substantive right" to recover for the work time for which they claim they were not compensated.  They attempt to do so by claiming that they "were not paid for all

of their hours worked as required by contract and by statute because of Defendant's practice of deducting idle time recorded in TimeQey from their weekly hours worked." Am. Compl. ¶ 43.  As described below, however, their efforts are unavailing.

### B.  Plaintiffs Have Not Alleged an Independent, Substantive Legal Right to the Claimed Straight Time Wages.

#### 1.  There is No Independent, Substantive, Statutory Right to the Claimed Idle Time Wages.

##### a.  *As a Matter of Law, Plaintiffs Always were Paid in Excess of the Applicable Minimum Wage for All Hours Worked.*

In the states at issue, the wage statutes provide a private cause of action in two instances: (1) if employers fail to pay employees at or above a prescribed minimum wage; and (2) if employers fail to pay an overtime premium when employees work more hours in a particular workweek than the statutory threshold.  *See* Minn. Stat. §§ 177.24, 177.25; N.Y. Lab. Law § 652(1); 12 NYCRR 142-2.2; Ohio Rev. Code §§ 4111.02, 4111.03; A.R.S. § 23-363; 29 U.S.C. §§ 206, 207.   Thus, there is no statutory right to straight time wages "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement."  *Hensley*, 786 F.2d at 357 (citing *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)).  *See also LePage v. Blue Cross and Blue Shield of Minn.*, No. CIV 08-584 RHK/JSM, 2008 WL 2570815, at *4 (D. Minn. June 25, 2008) (citing *Hensley, supra*); *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (the FLSA rejects "any minimum wage claim [employees] might have brought . . .

8

[if] their salary, when averaged across their total time worked, still paid them above minimum wage."); *Levert v. Trump Ruffin Tower I, LLC*, No. 2:14-CV-01009-RCJ, 2015 WL 133792, at *2 (D. Nev. Jan. 9, 2015) (collecting cases); DOL Field Operations Handbook § 30b02 (June 30, 2000) ("an employee . . . is considered to be paid in compliance if the overall earnings for the w/w [workweek] equal or exceed the amount due at the applicable MW [minimum wage]").

Nowhere in Plaintiffs' First Amended Complaint do they allege that their hourly wages fell below the state minimum wage rates. Rather, Plaintiffs merely contend they were not compensated "for all hours worked." Am. Compl. ¶¶ 7-8, 10, 12. This defect alone dooms their claim. *See, e.g., LePage,* 2008 WL 2570815, at *4*; Bailey*, 2009 WL 3248305, at *2 (finding that plaintiff pizza delivery drivers failed to identify "any facts that would permit the Court to infer that Plaintiffs actually received less than minimum wage" and, therefore, dismissing their FLSA claims with prejudice); *Bojaj v. Moro Food Corp.*, No. 13 CIV. 9202, 2014 WL 6055771, at *2-3 (S.D.N.Y. Nov. 13, 2014) (dismissing FLSA and NYLL minimum wage claims where the complaint "allege[s] neither the hours of [plaintiff's] employment with [defendant], nor the payments that amounted to compensation below the state or federal minimum wage); *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 RLM, 2014 WL 6674583, at *9-10 (E.D.N.Y. Nov. 25, 2014) (finding plaintiff failed to state a claim for unpaid minimum wages where the complaint "contains no relevant factual information . . . as to render plaintiff's regular rate of pay below the minimum wage."); *Montijo v. Romulus Inc.*, No.

9

CV-14-264-PHX-SMM, 2015 WL 1470128, at *8 (D. Ariz. Mar. 31, 2015) (dismissing plaintiffs' minimum wage claims because "the pleading never alleges that during any particular workweek, [defendant] paid them less than the Arizona minimum wage").

Furthermore, Plaintiffs have failed to plead *any* set of facts that could give rise to plausible minimum wage claims under the applicable state statutes.  Under the workweek standard, an employee's regular rate of pay "is determined by dividing the employee's remuneration in any workweek by the total hours worked."  Minn. R. 5200.0130.  *See also* 12 CRR-NY § 142-2.16 ("The term regular rate shall mean the amount that the employee is regularly paid for each hour of work."); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. 2013) (the NYLL requires "only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee").  *See also Hensley, supra.*[1]  During the periods that Plaintiffs performed services for Defendant, the applicable minimum wages statutes provided as follows:

- Shoots: "[E]very large employer must pay each employee wages at a rate of at least: $6.15 per hour."  Minn. Stat. § 177.24(1)(b)(1) (2012).

- Bell: "Every employer shall pay to each of its employees for each hour worked a wage of not less than" $7.25 (beginning July 24, 2009) and $8.00 per hour (beginning December 31, 2013).   12 CRR-NY 142-2.1(a)(2) and (3).  NYLL § 652(1)

---

[1] Courts uniformly have held that the Ohio Wage Act and Arizona Minimum Wage Act should be interpreted in accordance with the FLSA.  *See*, *e.g., Douglas v. Argo-Tech. Corp.*, 113 F.3d 67, 69 (6th Cir. 1997); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 732 (S.D. Ohio 2006), *aff'd*, 225 Fed. Appx. 362 (6th Cir. 2007); *East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1184 (D. Ariz. 1998).   Thus, application of the workweek standard to the Ohio and Arizona minimum wage provisions is appropriate.

- Turner: "Every employer shall pay to each of its employees for each hour worked a wage of not less than" $8.00 (beginning December 31, 2013) and $8.75 per hour (beginning December 31, 2014).  12 CRR-NY 142-2.1(a)(3) and (4).

- Hope: "Every employer…shall pay each of the employer's employees at a wage rate of not less than the wage rate specified in Section 34a of Article II, Ohio Constitution."  Ohio Rev. Code § 4111.02.  *See also* Ohio Const., art. II, § 34a ("every employer shall pay their employees a wage rate of not less than six dollars and eighty-five cents per hour beginning January 1, 2007"); Exhibits A - C (setting wage rates at $7.40 (2011), $7.70 (2012) and $7.85 (2013), respectively).

- Ostrovsky: "Employers shall pay employees no less than the minimum wage…[.]"  A.R.S. § 23-363.  *See also* Exhibit D (setting 2014 wage rate at $7.90).

In the First Amended Complaint, Shoots alleges that for the pay period beginning May 16, 2014, and ending May 31, 2014 (a period of 11 work days), he worked 85.22 hours, but only was paid for 79.14 hours, meaning that he allegedly was not compensated for 6.08 hours for that pay period.  Am. Compl. ¶ 46.  Shoots was paid for those 79.14 hours at a rate of $12 per hour.  *See* Dkt. 30 at ¶ 30.  Taking his allegation of approximately 6 hours of off-the-clock work for this pay period as true, and assuming it applied to every pay period, his effective hourly rate at all times was $11.14, almost double the Minnesota minimum wage requirement in effect during Shoots's employment with Defendant ($6.15/hour), and well above the federal minimum wage requirement ($7.25/hour).[2]

---

[2] Shoots's effective hourly rate is calculated by dividing the amount he was paid during the pay period by the number of hours he claims he worked ($12/hour $\times$ 79.14 hours paid = $949.68 $\div$ 85.22 hours worked = $11.14).

Plaintiffs Bell, Turner and Ostrovsky do not provide even an estimate of alleged unpaid hours. But if they, like Shoots, allegedly worked six hours off-the-clock per pay period, the results would be the same. For example, Bell alleges that for the pay period beginning on June 16, 2012, and ending on June 30, 3012 (10 work days), he was paid for 77.53 hours of work at his regular hourly rate, but that "[h]ad Defendant properly paid Plaintiff Bell for all hours worked, it would have paid him additional straight time wages." Am. Compl. ¶ 47. Assuming he worked six hours of off-the-clock work for this pay period, his effective hourly rate was $13.92,[3] almost double the New York minimum wage in effect at the time ($7.25).

Likewise, Turner was paid for 80.36 hours of work for the pay period beginning July 16, 2014, and ending July 31, 2014 (12 work days). Am. Compl. ¶ 48. Adding six additional hours results in an effective hourly rate of $10.47, well above the $8.00 New York minimum wage in effect at the time.[4] Ostrovsky was paid for 80.05 hours of work for the pay period beginning October 1, 2014, and ending October 15, 2014 (11 work days). Am. Compl. ¶ 50. An additional six hours of allegedly unpaid time to that period results in an effective hourly rate of $10.40,[5] substantially higher than Arizona's minimum wage in 2014 ($7.80).

---

[3] Bell was paid $15 per hour in 2012. *See* Dkt. 30 at ¶ 30. $15/hour × 77.53 hours paid = $1,162.95 ÷ 83.53 hours worked = $13.92.
[4] Turner was paid $11.25 per hour during this period in 2014. *See* Dkt. 30 at ¶ 30. $11.25/hour × 80.36 hours paid = $904.05 ÷ 86.36 hours worked = $10.47.
[5] Ostrovsky was paid $11.50 per hour. *See* Dkt. 30 at ¶ 30. $11.50/hour × 80.05 hours paid = $920.58 ÷ 86.05 hours worked = $10.70.

This leaves Plaintiff Hope, who merely alleges that "on an average work day Defendant failed and/or refused to compensate her for approximately thirty minutes of compensable time." Am. Compl. ¶ 49. Assuming Hope worked a five-day, 40-hour schedule in 2012, adding an additional 2.5 hours of unpaid time results in an effective hourly rate of $8.94,[6] well above the Ohio minimum wage rate in effect at the time ($7.70).

Under these circumstances, Plaintiffs' straight time claims fail as a matter of law. *See, e.g., Hensley*, 786 F.2d at 357 (finding no violation of the FLSA where the plaintiff's "total weekly wage was at all times above the statutory minimum wage"); *Rios v. Jennie-O Turkey Store, Inc.*, 793 N.W.2d 309, 313 (Minn. App. 2011) (affirming summary judgment in favor of the defendant where the plaintiffs "could not demonstrate that their compensation fell below the amount required by the MFLSA"); *Caci v. Wiz of Lake Grove, Inc.,* 267 F. Supp. 2d 297, 299-300 (E.D.N.Y. 2003) (dismissing plaintiff's FLSA minimum wage claim because plaintiff's "weekly pay divided by the total hours he worked—including hours he worked after the store closed—yielded an hourly rate exceeding the required minimum wage."); *Oram*, 979 F. Supp. 2d at 506-07 (dismissing plaintiff's minimum wage claims as a matter of law because his rate of pay, based on his weekly pay divided by the number of hours he allegedly worked, far exceeded the minimum wage rate); *Schaefer v. P.F. Chang China Bistro, Inc.*, No. CV-14-185-PHX-SMM, 2014 WL 3809069, at *5 (D. Ariz. Aug. 1, 2014) (finding that plaintiff failed to

---

[6] Hope's rate of pay from November 21, 2011 to December 1, 2012 was $9.50 per hour. *See* Dkt. 30 at ¶ 30. $9.50/hour × 40 hours paid = $380.00 ÷ 42.5 hours worked = $8.94.

state a minimum wage claim where plaintiff's "aggregate wages for a work week, when averaged across the total time worked, is equal to or in excess of the minimum wage.") (internal brackets and quotations omitted).

In sum, there is no imaginable scenario under which Plaintiffs can plead facts sufficient to establish that Defendant violated the minimum wage provisions of the MFLSA, NYLL, Ohio Wage Act, or AMWA.  *See Twombly*, 550 U.S. at 570.  In turn, this means that Plaintiffs have no viable independent statutory right to the claimed unpaid straight time wages that could give rise to a claim under the prompt payment statutes. *See supra* at 5-7.

> **b.** ***Unpaid Break Time Does Not Give Rise To An Independent Cause Of Action Under State Statutes.***

State and federal administrative rules regarding the payment of breaks less than 20 minutes in duration do not create an independent statutory right that gives rise to prompt payment claims.  *See, e.g.*, Am. Compl ¶¶ 120-121 (citing to Minn. Rule 5200.0120); ¶ 132, (citing to 29 C.F.R. § 785.18 with respect to Plaintiffs' New York straight time claim).  Neither those rules nor any administrative rules promulgated under Arizona and Ohio law provide for a cause of action or a specific remedy; rather, they merely are administrative rules helping to define "hours worked" for purposes of determining whether employers paid the minimum wage for all hours worked.

For example, Minnesota Rule 5200.0120 states:

### 5200.0120 HOURS WORKED

Subpart 1. **General**. *The minimum wage must be paid for all hours worked*. Hours worked include training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment or must remain on the premises until work is prepared or available. *Rest periods of less than 20 minutes may not be deducted from total hours worked*.

Minn. R. 5200.0120, subpart 1 (emphasis added).[7] Likewise, 29 C.F.R. § 785.18 states: "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. *They must be counted as hours worked*. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time." 29 C.F.R. § 785.18. (emphasis added).[8]

Thus, Defendant's alleged failure to comply with any state or federal break time rules matter only if, as a result, Defendant failed to pay minimum wage for all hours worked. Because the pleadings conclusively establish that Plaintiffs at all times were

---

[7] Rule 5200.0120 derives its statutory authority from Section 177.28 of the MFLSA. *See* Minn. R. 5200.0120 ("Statutory Authority: MS s 177.28; 181A.12"). In fact, the Notice of Intent to Adopt Rules without a Public Hearing introducing proposed amendments to the Minnesota Administrative Rules, including the addition of language in Minn. R. 5200.0120 that "The minimum wage must be paid for all hours worked[]," specifically states that the proposed amendments "*relate to enforcement determinations under the Fair Labor Standards Act*, Minn. Stat. Section 177.21 through 177.25…[.]" 11 Minn. Reg. 769 (Nov. 3, 1986) (emphasis added).
[8] 29 C.F.R. § 785.18 derives its statutory authority from the FLSA. *See* 29 C.F.R. § 785.18 ("Authority: 52 Stat. 1060; 29 U.S.C. 201–219[.]")

paid applicable statutory minimum wage rates, their reliance on break rules fails to give rise to an independent statutory right sufficient to save their prompt payment claims.

### 2. There is No Independent Contractual Right to the Claimed Wages.

In a further attempt to shoehorn their straight time claims into timing claims under the state prompt payment statutes, Plaintiffs Shoots, Hope and Ostrovsky assert that Defendant "was required by agreement to pay [them] for all hours worked."  Am. Compl. ¶¶ 115, 151, 170.  Plaintiffs Bell and Turner similarly allege that they were "entitled to full payment of wages for all hours worked at their contractual hourly wage…" and that Defendant violated New York's prompt payment statute "by failing to compensate [them] the straight-time wages they were owed for all hours worked."  Am. Compl. ¶¶ 130-131. Plaintiffs' Amended Complaint, however, falls far short of pleading the requisite mutual assent and meeting of the minds to give rise to a contractual right to the claimed unpaid idle or break time.  *See*, *e.g.*, *DeSouza v. Andy Frain Servs., Inc.*, No. 12 CIV. 1308 WHP, 2012 WL 3245496, at *2-3 (S.D.N.Y. Aug. 6, 2012) (under New York law, "[t]o show the existence of a contract, a plaintiff must allege an offer, acceptance, and consideration, and make a showing of a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound") (internal citations and quotations omitted); *Khedouri v. Shell Holdings, Inc.*, No. CV-09-315-PHX-DGC, 2010 WL 454996, at *1-6 (D. Ariz. Feb. 9, 2010) ("[i]t is well-established under Arizona law that before a binding contract is formed, the parties must mutually consent to all material terms") (internal citations and quotations omitted); *Pikus v. Metro. Life Ins. Co.*, No. 1:03CV621, 2005

WL 1420795, at *13-14 (N.D. Ohio June 16, 2005) ("[u]nder Ohio law, a plaintiff seeking to establish the existence of a contract must show the elements of mutual assent (generally, offer and acceptance) and consideration[,] . . . a meeting of the minds and that the contract was definite as to its essential terms") (internal citations and quotations omitted); *Lappen v. Genuia Garment Intern., Inc.*, No. CIV. 03-6110 DWF/SRN, 2005 WL 348360, at *4-5 (D. Minn. Feb 9, 2005) (a binding employment contract under Minnesota law "requires an offer, acceptance, and consideration" and "a meeting of the minds concerning its essential elements").

The entirety of Plaintiffs' contractual argument is premised on the fact that they each received a letter offering employment at a fixed hourly rate. Am. Compl. ¶ 32. The offer letters, which remind Plaintiffs that they are at-will employees, say nothing about being paid for "all hours worked," much less address whether they would be paid for idle or break time. *See* Dkt. 78-1. These vague allegations are not evidence of a contract. If they were, then every employee would have a contract with his or her employer. *See, e.g., Russell v. Citi, et al*, No. CIV.A. 12-16-DLB-JGW, 2012 WL 5947450, *3 (E.D. Ky. Nov. 28, 2012) (rejecting breach of implied contract claim to pay for all hours); *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011) (dismissing breach of implied contract claim to pay for certain activities where there is no evidence that the employer agreed to compensate the employee for the particular work allegedly performed); *Khedouri, supra* (finding that the purported "meeting of the minds" regarding severance merely reflected plaintiff's own

understanding of severance pay, not any mutual assent); *Ramirez v. NutraSweet Co.*, No. 95 C 0130, 1997 WL 684984, at *3 (N.D. Ill. Oct. 30, 1997) (dismissing breach of contract claim where plaintiffs could not show that payment for informal relief and changing of clothes was a "clear and definite term[] of their employment contracts.")

Indeed, elsewhere in their Amended Complaint, Plaintiffs plead allegations that *negate* any claimed contractual promise to pay for idle or break time.  For example, in Paragraph 37, they claim that "Defendant's policy is to refuse to reimburse employees for time that was used as a rest break."  *See also* Am. Compl. ¶ 39 ("Defendant's policy prohibits the reimbursement time range from matching any other times already logged in TimeQey. …. As a result of this policy, two minutes of the CCA's time remains uncompensated every time Defendant grants a reimbursement."); ¶ 40 (referencing "Defendant's policy of deducting idle time recorded by TimeQey from their total hours worked each workweek").  Nor can Plaintiffs show that that they understood that they would be paid for idle time when they signed their offer letters, when they elsewhere plead that "Defendant does not explain the TimeQey system, its policies on non-compensable time, or their ability to request reimbursement for idle time to newly hired CCAs."  Am. Compl. ¶ 38.  "When a plaintiff's argument is contradicted by the allegations in his own complaint, that argument is not entitled to a presumption of truth." *Russell*, 2012 WL 5947450 at *3.  *See also Shoemaker v. Cnty. of Glenn*, 490 F. App'x 894, 895 (9th Cir. 2012) (affirming dismissal of employee's breach contract claim because the court "need not accept as true conclusory allegations" that are contradicted

18

by the allegations and documents referenced in the complaint); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (same where "attenuated allegations" supporting a claim were contradicted "by more specific allegations in the [c]omplaint"); *Brautigam v. Damon*, No. 1:11-CV-551, 2012 WL 481844, at *7-8 (S.D. Ohio Feb. 14, 2012) (granting motion to dismiss where plaintiff's "conclusory allegations" contradicted the "factual content of his complaint"); *Sanders v. Woolfolk*, No. 4:09CV1207AGF, 2009 WL 2567013, at *2 (E.D. Mo. Aug. 17, 2009) (same); *In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1157 (S.D. Ohio 2009) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.") (internal quotation and citation omitted).

Finally, even assuming that Plaintiffs had alleged a viable contractual right to the claimed unpaid idle time, Defendant disputes the existence of the contract and/or that it breached one. *See* Dkt. 30 at ¶¶ 32, 122, 131, 153, 174. This dispute, by itself, forecloses a cause of action under state prompt payment statutes. *See*, *e.g.*, *Baum v. Intertek Testing Services, No.* 1:13CV1347, 2013 WL 6492372, at *4 (N.D. Ohio Dec. 10, 2013) ("the Complaint indicates that a dispute exists between the parties as to [unpaid wages'] existence . . . making O.R.C. § 4113.15 inapplicable."); *Lower v. Electronic Data Sys. Corp.*, 494 F. Supp. 2d 770, 775 (S.D. Ohio 2007) ("Even if the bonus to which Plaintiff believes he is entitled is properly considered part of his wages, the fact of his

19

entitlement thereto is very much in dispute, and therefore outside the scope of § 4113.15."); *Cosgrove v. Regents of the Univ. of Minn.*, No. A12-1288, 2013 WL 776967, at *4 (Minn. App. Mar. 4, 2013) *review denied* (July 31, 2013) (holding that "whether wages are owed to appellant is not properly determined through a claim brought under section 181.13. Rather, the allegation that appellant has a right to wages that remain unpaid would need to be undisputed before appellant could maintain a section 181.13 claim for untimely payment of those wages.").

VI.   **COUNTS III, V, VI AND VII FAIL TO STATE CLAIMS FOR UNPAID OVERTIME COMPENSATION UPON WHICH RELIEF CAN BE GRANTED.**

Although the Eighth Circuit has not addressed the sufficiency of overtime pleadings, the clear trend nationally is to require plaintiffs to substantiate conclusory "the-defendant-unlawfully-harmed-me" allegations with factual allegations tending to show that the named plaintiffs and putative class members, in fact, worked unpaid overtime hours; *Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009).  *See also Landers v. Quality Commc'ns., Inc.,* 771 F.3d 638, 644-45 (9th Cir. 2014) ("to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during *that* workweek") (emphasis added); *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (dismissing FLSA overtime claim where plaintiffs alleged that "[b]ecause they typically worked full time, or very close to it and also worked several hours of unpaid work each week, . . . it is certainly plausible that at

20

least some of the uncompensated work was performed during weeks when the plaintiffs' total work time was more than forty hours" and failed to allege that the unpaid hours were actually worked during a typical forty-hour workweek); *Pruell v. Caritas Christi*, 678 F.3d 10, 13-14 (1st Cir. 2012) (finding overtime allegations to be deficient where plaintiffs failed to allege examples of unpaid time, a description of work performed during overtime periods, or estimates of the overtime amounts owed).[9]

At a minimum, courts have required plaintiffs to provide basic factual allegations regarding their rate of pay, work schedule, job duties, and specifically the job duties they performed during the alleged unpaid overtime work. *See Bailey, supra*; *Guimaraes v. TJX Cos., Inc.*, No. 2:12-CV-01250, 2012 WL 6671333, at *4 (D.N.J. Dec. 20, 2012) (dismissing FLSA claims because "Plaintiff fails to explain what her job responsibilities were [and] how much she was paid"); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 510 (E.D.N.Y. 2011) (dismissing FLSA overtime claim where Plaintiff failed to plead allegations sufficient to establish that unpaid work time was compensable under the FLSA). Courts have found that allegations regarding work schedules are particularly necessary to show that the alleged unpaid work would have resulted in overtime work in excess of 40 hours. *See Sampson v. Medisys Health*

---

[9] *See also Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008) (dismissing wage and hour claim where plaintiffs made conclusory assertions that they "regularly worked ... overtime each week but were not paid ... overtime wages"); *Walker v. Serv. Corp. Int'l*, No. 4:10-CV-00048, 2011 WL 1370575, at *7 (W.D. Va. April 12, 2011) (holding that a claim for unpaid wages must contain allegations of fact describing "when the alleged unpaid wages were earned (i.e., which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation – the heart of the claim.") (internal citations omitted).

*Network Inc.*, No. 10-CV-1342 SJF ARL, 2011 WL 579155, at *2, 4 (E.D.N.Y. Feb. 8, 2011) (dismissing complaint alleging that plaintiffs performed work during meal breaks but were not paid for that time, because "plaintiffs do not allege any facts to support the general conclusion that by working during the challenged periods they would have been working in excess of forty hours in one week period").

These facts are missing from Plaintiffs' First Amended Complaint.  For example, Turner and Ostrovsky admit that for a single pay period, they were paid for both straight time *and* overtime, but allege that "[h]ad Defendant properly paid [them] for all hours worked during this pay period, it would have paid [them] additional straight time and overtime wages."  Am. Compl. ¶¶ 57, 59.  Turner and Ostrovsky fail to include any allegations regarding their hours worked, weekly schedules, the compensable work they purportedly performed during the unpaid time, or any other facts supporting their assertion that Defendant failed to pay them additional overtime.

Hope's allegations are even more conclusory and vague.  She contends that she "worked in excess of 40 hours in one or more workweeks during April 2013, when she was frequently scheduled to work 9.5-hour shifts on Mondays and Tuesdays" (Am. Compl. ¶ 58), but provides no facts to support her apparent contention that working two 9.5-hour shifts during a workweek resulted in her working more than 40 hours that week.  Like Turner and Ostrovsky, she also does not include factual allegations regarding the hours that she worked, the compensable work allegedly performed during the time at issue, or any other information to support her overtime claim.

22

Moreover, nowhere in the First Amended Complaint do Plaintiffs provide "an approximation of the number of unpaid weekly overtime hours worked over the employment period," which is "the critical component of a complaint alleging violations of [overtime statute] . . ." *Attanasio v. Cmty. Health Sys. Inc.*, No. 3:11-CV-582, 2011 WL 5008363, at *6-7 (M.D. Pa. Oct. 2, 2011); *see also Michaelgreaves v. Gap, Inc.*, No. CIV.A. 11-6283, 2013 WL 257127, at *5 (D.N.J. Jan. 23, 2013) ("In order for a claim of overtime pay under the FLSA to withstand a motion to dismiss, the complaint must allege, at least approximately, the hours worked for which these wages were not received."); *Guimaraes*, 2012 WL 6671333, at *4 (dismissing FLSA claims because "Plaintiff fails to explain . . . approximately how many overtime hours she worked").

Because Plaintiffs' First Amended Complaint is devoid of any factual allegations that could raise an inference that they worked more than 40 hours in a given workweek and that the alleged work performed during those unpaid hours constitutes "compensable" work time under the FLSA and state statutes that would have entitled them to overtime compensation, dismissal of Plaintiffs' overtime claims is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice, and order such other and further relief in its favor as the Court deems appropriate under the circumstances.

Dated: June 25, 2015

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Stephanie L. Sweitzer*

Gina K. Janeiro (#0345337)
Brian T. Benkstein (#0325545)
JACKSON LEWIS P.C.
225 South Sixth Street
Suite 3850
Minneapolis, MN 55402
Tel: 612-341-8131
Fax: 612-341-0609
JaneiroG@jacksonlewis.com
Brian.Benkstein@jacksonlewis.com

Sari M. Alamuddin (admitted *pro hac vice*)
Stephanie L. Sweitzer (admitted *pro hac vice*)
Kevin F. Gaffney (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601-5094

Tel: +1.312.324.1000
Fax: +1.312.324.1001
salamuddin@morganlewis.com
ssweitzer@morganlewis.com
kgaffney@morganlewis.com

*Attorneys for Defendant iQor Holdings US Inc.*

24