# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Paris Shoots, Jonathan Bell, Maxwell Turner, Tammy Hope, Phillipp Ostrovsky, Brenda Brandt, Anissa Sanders, Najai McCutcheon, and Leticia Rodriguez, on behalf of themselves, the Proposed Rule 23 Classes, and others similarly situated, | Case No. 15-cv-563 (SRN/SER) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| iQor Holdings US Inc., | |
| Defendant. | |

Anna P. Prakash, Carl F. Engstrom, Rachhana T. Srey, Robert L. Schug, and Timothy C. Selander, Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, Minnesota 55402, Brian T. Rochel, Douglas L. Micko, and Vildan A. Teske, Teske, Micko, Katz, Kitzer & Rochel, PLLP, 222 South Ninth Street, Suite 4050, Minneapolis, Minnesota 55402, for Plaintiffs.

Brian T. Benkstein and Gina K. Janeiro, Jackson Lewis P.C., 150 South Fifth Street, Suite 3500, Minneapolis, Minnesota 55402, Robert J. Lee, Shon Morgan, and Viola Trebicka, Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street, Los Angeles, California 90017, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

Before the Court is Defendant iQor Holdings US Inc.'s Motion to Dismiss Count

XI of Plaintiffs' Third Amended Complaint [Doc. No. 295] for failure to state a claim

upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court converts Defendant's motion to a motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and grants the motion.

## II.   BACKGROUND

The facts of this case have been stated at length in two prior orders of this Court, which are incorporated herein by reference. *See Shoots v. iQor Holdings US Inc.* ("*Shoots I*"), No. 15-cv-563 (SRN/SER), 2015 WL 6150862, at *1-6 (D. Minn. Oct. 19, 2015); *Shoots v. iQor Holdings US Inc.* ("*Shoots II*"), No. 15-cv-563 (SRN/SER), 2016 WL 1733437, at *1-3 (D. Minn. Apr. 29, 2016). Relevant to this particular motion are those allegations tied to Count XI of the Third Amended Complaint ("TAC") [Doc. No. 294], which asserts—on behalf of Plaintiff Paris Shoots individually and a proposed class generally—that Defendant iQor Holdings US Inc. ("iQor") willfully violated the stand-alone disclosure requirement of the Fair Credit Reporting Act ("FCRA"). *See* 15 U.S.C. § 1681b(b)(2). That provision prohibits an employer from obtaining a consumer report on a prospective employee without first providing "a clear and conspicuous disclosure . . . in a document that consists *solely* of the disclosure, that a consumer report may be obtained for employment purposes." *Id.* at § 1681b(b)(2)(A)(i) (emphasis added). The employer is further prohibited from obtaining the report until the prospective employee "has authorized in writing" its procurement. *Id.* at § 1681b(b)(2)(A)(ii).

Shoots alleges that when he applied to work for iQor in April 2014, he was presented with, and signed, an "Applicant Disclosure, Authorization & Release" ("Applicant Disclosure") form, which explained that "as a condition for employment,

iQor may obtain or have prepared a consumer investigative report . . . ."  (TAC, Ex. 1 at 2).  According to Shoots, however, the Applicant Disclosure contained several provisions that violated the FCRA's stand-alone requirement.  In particular, he points to the inclusion of a liability waiver, an "overbroad" authorization for the procurement of information, and various "miscellaneous" statements, such as notification that "any false statement" in the application would be grounds for rejection of Shoots's application.  (*See* TAC ¶¶ 103-109; Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss [Doc. No. 302] ("Pl.'s Mem. in Opp.") at 4.)  By failing to provide a stand-alone disclosure free of extraneous information, Shoots contends, iQor "willfully violated" 15 U.S.C. § 1681b(b)(2)(A)(i). (TAC ¶ 120.)  As a remedy, Shoots seeks statutory and punitive damages, as well as costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a).  Shoots does not allege that either he or any other member of the proposed class suffered actual harm or actual damages as a result of iQor's misconduct.

iQor first moved to dismiss the FCRA claim from the Complaint on November 18, 2015, arguing that it failed to sufficiently allege a statutory violation under the text of the Act.  (*See* Def.'s Mot. to Dismiss [Doc. No. 150].)  In particular, iQor contended alternately that no violation had occurred because the "extraneous" language contained in the Applicant Disclosure was permitted by the FCRA, and that, because Shoots failed to allege actual damages, he was required to show that iQor had acted willfully in violating the law, which he was unable to do.  *See Shoots II*, 2016 WL 1733437, at *3.  This Court disagreed as to both arguments, declaring that "at this stage of the litigation, and under

the motion to dismiss standard or review, the Court finds that Shoots's pleading sufficiently states a claim upon which relief can be granted." *Id.* at *4.

In the interim between the Court's decision in *Shoots II* and the filing of iQor's present motion, the Supreme Court issued its decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), which highlighted the independent significance of the Article III standing requirement in the analysis of cases lacking actual damages.  On the basis of that decision, iQor brings this latest motion to dismiss, arguing that because Shoots "[d]oes [n]ot and [c]annot" demonstrate that he suffered a "concrete injury" for purposes of constitutional standing doctrine, his FCRA claim cannot be allowed to proceed.  (*See* Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 297] ("Def.'s Mem. in Supp.") at 7.) By way of response, Shoots contends that he did indeed suffer constitutionally cognizable harms, arguing that iQor's actions amounted both to an invasion of privacy and a violation of Shoots's right to receive information in the manner specified by law.  (*See* Pl.'s Mem. in Opp. at 10.)

## III.  DISCUSSION

Before proceeding to the merits of this matter, the Court must briefly pause to address iQor's framing of this motion as one for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A question of Article III standing is a question of justiciability.  *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016).  As such, it is a threshold determination that the Court must make prior to any consideration of the legal issues of the claim itself—where standing is absent, the Court's has no authority to go further than dismissing the case.  *See Ex parte*

*McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *see also Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 515 (D.C. Cir. 2016) (vacating judgment where district court considered issue of failure to state a claim before that of Article III standing).  Because iQor asks the Court to find that it lacks authority to proceed past the initial question of its own jurisdiction, iQor's motion should have been brought under Fed. R. Civ. P. 12(b)(1).  However, as it is well-established that the "substance of a motion rather than the form of a motion is controlling," the Court may exercise its inherent authority to convert the motion to one for lack of subject matter jurisdiction.  *BBCA, Inc. v. United States*, 954 F.2d 1428, 1431-32 (8th Cir. 1992); *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (8th Cir. 1983); *John v. MainGate, Inc.*, No. 10-cv-4902 (SRN/JJK), 2014 WL 3805662, at *3 (D. Minn. Aug. 1, 2014).  It will do so here.

## A.      Legal Principles of Article III Standing

To establish Article III standing, the plaintiff must show—as an "irreducible constitutional minimum"—the existence of three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, there must be an "injury in fact."  *Id.*  Second, "there must be a causal connection between the injury and the conduct complained of," such that the injury is "fairly trace[able] to the challenged action of the defendant . . . ."  *Id.*  Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (quotations and citation omitted).  Together, these three constitutional prerequisites to litigation in the federal courts serve

5

the salutary functions of "ensur[ing] that federal courts do not exceed their authority as it has been traditionally understood," and preventing the misuse of scarce judicial resources by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547 (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982)).

The burden of establishing the elements of standing is on the party invoking federal jurisdiction. *See Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 82 (8th Cir. 1996). Where, as here, the defendant challenges the existence of jurisdiction on the face of the pleadings, and not through extrinsic evidence, the reviewing court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2012). The Court does not weigh the underlying merits of the claim, however, nor does it grant additional credence to the plaintiff's arguments merely because the suit comes before it in the form of a class action. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

Here, iQor alleges lack of jurisdiction on the first standing element—injury in fact. The Supreme Court has made clear that to pass this "[f]irst and foremost" hurdle, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998), a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations

6

and citations omitted).   Though iQor does not appear to contest that Shoots's alleged injury is both particularized and actual, it maintains that the first requisite for injury in fact—concreteness—is missing.   Fortunately, the Supreme Court's recent decision in *Spokeo* goes far toward illuminating the boundaries of this inquiry.

As in the present matter, *Spokeo* involved a class action lawsuit brought under the FCRA.   *See* 136 S. Ct. at 1546.   The defendant operates an online "people search engine," allowing interested individuals to input a person's name or other identifying data and receive a detailed profile of that person, compiled from various databases.   *Id.* at 1544.   Information provided can include the person's "address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences."   *Id.* at 1546.   The plaintiff learned that the defendant had provided inaccurate information about the plaintiff to one of the site's users, which he alleged constituted a violation of the FCRA's procedural requirements.   *Id.*   Although the district court dismissed the complaint on grounds that the plaintiff had failed to allege an injury in fact, the Ninth Circuit reversed, holding that plaintiff's injury "satisf[ied] the injury-in-fact requirement of Article III" because "[defendant] violated [the plaintiff's] statutory rights, not just the statutory rights of other people."   *Id.* (quoting *Robins v. Spokeo*, 742 F.3d 409, 413-14 (9th Cir. 2014)).

The Supreme Court granted certiorari and vacated the judgment of the circuit court.   *Id.* at 1550.   According to the Court, the Ninth Circuit's injury-in-fact analysis was flawed because it "elided" the "independent requirement" that the plaintiff's injury must be both particularized *and* concrete.   *Id.* at 1548.   As the Court explained, a concrete

7

injury "must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted). Nevertheless, the Court stressed that "concrete" does not necessarily mean "tangible," and "both history and the judgment of Congress play important roles" in determining whether an intangible harm constitutes an injury in fact. *Id.* at 1549. Thus, the Court noted, it is "instructive to consider whether an alleged harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* (citation omitted). Likewise, Congress is "well positioned to identify intangible harms" that should be elevated "to the status of legally cognizable injuries . . . ." *Id.* (quotation and citation omitted).

The Court went on to make clear, however, that Congress' ability to create new statutory rights, and to authorize plaintiffs to sue to enforce those rights, "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement . . . ." *Id.* Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Thus, the Court emphasized, a plaintiff cannot merely "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* Because the Ninth Circuit had failed to fully consider these principles, the Court remanded the case for reconsideration. *Id.* at 1550.

## B.    Lack of Constitutional Standing

In light of *Spokeo*, iQor argues that Shoots lacks constitutional standing to assert his FCRA claim because his alleged injury does not rise above the sort of "bare procedural violation" that the Supreme Court expressly rejected. (*See* Def.'s Mem. in Supp. at 7. Specifically, iQor notes that Shoots has conceded that he received all the

information FCRA requires be disclosed, that he understood the disclosure, and that he authorized the background check. (*Id.* at 2.)  The simple fact that the Applicant Disclosure contained information beyond that required by the FCRA—in iQor's view— amounts to no more than a technical violation that did not cause Shoots to sustain a constitutionally concrete injury. (*Id.* at 9-10.)

In response, Shoots contends that the Complaint does allege two concrete injuries—invasion of privacy and a denial of Shoots's right to information. (Pl.'s Mem. in Opp. at 2-3, 10.)  The Court will address each of these arguments in turn.

### 1.     Invasion of Privacy

Shoots's first argument for the existence of Article III standing is, in effect, that because iQor failed to provide him with a stand-alone disclosure as required by the FCRA, it was in non-compliance with the law, making its subsequent procurement of his consumer report illegal and an invasion of his privacy. (*See id.* at 13.)  Shoots emphatically declares that the injury underlying his claim is "not the provision of a disclosure that contains a purported liability release and other extraneous information," but the procurement of the report itself. (*Id.*)  To support this argument, he devotes several pages of his brief to documenting the long history of the right to privacy, noting that it "derived from natural law," and dates "back to Roman and early English legal traditions." (*Id.* at 15. (quotation and citation omitted).)  Because Congress's admitted purpose in passing the FCRA was to protect privacy, Shoots contends that the joint verdict of historical practice and Congressional action have successfully raised a

violation of the FCRA's provisions to an injury of constitutional sufficiency.   (*Id.* at 16 (*citing Spokeo*, 136 S. Ct. at 1549).)

While facially appealing, this argument suffers from several flaws.   First, the Court notes that it is far from clear that Shoots's characterization of his injury (procurement of the consumer report itself, as opposed to receipt of a disclosure form containing extraneous information) is an accurate portrayal of the allegations in the Complaint.   *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation and citation omitted).   Even taking that depiction as correct, however, Shoots's argument cannot survive the Supreme Court's decision in *Spokeo*.   By contending that non-compliance with one provision of the FCRA automatically renders a defendant's subsequent actions an invasion of privacy, Shoots would raise every technical violation of any statute to the realm of a major substantive harm.   This is a leap too far, and is directly contradicted by *Spokeo*, which made clear that some subset of violations are too small to implicate—on a standing level—the interests protected by the larger statutory framework.   *See* 136 S. Ct. at 1550.

A hypothetical used to illustrate this point in *Spokeo* is particularly relevant here. Looking to the FCRA, the Court noted that "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate," resulting in "no harm" to the plaintiff. *Id.*   Plainly, failure to provide this notice would leave a consumer reporting agency in non-compliance with the FCRA, and its subsequent actions might well be technically

10

illegal.  *See, e.g.*, 15  U.S.C. § 1681b(b)(1)(B) (providing that "[a] consumer reporting agency may furnish a consumer report for employment purposes *only if* . . . (B) the Consumer reporting agency provides with the report . . . a summary of the consumer's rights under this subchapter") (emphasis added).  But under *Spokeo*, that fact alone— without more—does not suffice to implicate substantive privacy concerns.

Given then that every violation of the FCRA's myriad requirements does not automatically grant constitutional standing, the Court is left to consider whether the acts alleged by Shoots as constituting an invasion of his privacy implicate more than a "bare procedural violation, divorced from any concrete harm . . . ."  *Spokeo*, 136 S. Ct. at 1549. This Court finds that they do not.  In his discussion of the history of the right to privacy, Shoots notes that American courts have long recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other."  (Pl.'s Mem. in Opp. at 15 (quoting Restatement (Second) of Torts § 652A (1977)).)  But for just as long they have held that consent to an invasion of privacy is a complete defense to that act.  *See* Restatement (Second) of Torts §§ 652F, 583.  Here, Shoots cannot avoid the key fact that he knew iQor intended to perform a background check, and that he consented to its doing so.  Perhaps if he alleged that the inclusion of extraneous detail in the Applicant Disclosure confused him in some way, or that he was somehow directly harmed as a result of the background check, a case could be made that an invasion of privacy actually occurred.  But Shoots alleges none of these things.  The closest he comes is the generalized claim that, absent a stand-alone disclosure, "applicants are hindered in their ability to preserve their privacy, and to correct errors or

other problems with the reports." (Compl. ¶ 93.)   But again, without some concrete indication that *his* ability to preserve his privacy, or to correct errors, was hindered, the Court cannot conclude that Shoots's allegations go beyond the sort of basic technical infraction that *Spokeo* tells us is insufficient to confer standing.  136 S. Ct. at 1549.

Several courts have considered remarkably similar factual scenarios post-*Spokeo*, reaching precisely the same conclusion the Court does here.  Most recently, in *Nokchan v. Lyft, Inc.*, No. 15-cv-03008-JCS, 2016 WL 5815287 (N.D. Cal. Oct. 5, 2016), the Northern District of California dismissed a putative FCRA class action on standing grounds where the plaintiff also alleged that the defendant's disclosure form contained "extraneous information."  2016 WL 5815287, at *1.  Although the plaintiff signed the disclosure form, he contended that his right to privacy had been violated by the defendant's subsequent illegal procurement of his consumer report.[1]  *Id.* at *1-2, 5.  In rejecting plaintiff's claim, the court noted his failure to allege "that as a result of [defendant's] failure to provide the disclosures in a separate document . . . he was confused about his rights or that he would not have consented to the background checks had he understood his rights.  Nor does he allege that he was harmed by the background check in any way."  *Id.* at *4.  Without such allegations, the court concluded that the plaintiff's FCRA claim did not cross the standing threshold set forth by *Spokeo*.  *Id.*; *see also Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-cv-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) (same); *Groshek v. Time Warner Cable, Inc.*, No.

---

[1] The plaintiff in *Nokchan* also alleged an informational injury, which the court also rejected. *See infra* at 19.

15-C-157, 2016 WL 4203506 (E.D. Wis. Aug. 9, 2016) (same); *Smith v. Ohio State Univ.*, No. 2:15-cv-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016) (same).

In contrast, while Shoots cites several cases to support his invasion of privacy argument, each contains allegations that materially distinguish it from the present matter—most notably that the disclosures involved were *unauthorized* by the plaintiff. *See, e.g.*, *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) (involving unauthorized tracking of online activity); *Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016) (unauthorized disclosure of consumer report); *Mey v. Got Warranty, Inc.*, No. 5:15-cv-101, 2016 WL 3645195 (N.D. W. Va. June 30, 2016) (unauthorized receipt of automated telephone call in violation of "do not call" provision).   For this reason, Shoots's authority is inapposite and unpersuasive here.

### 2.    Informational Injury

Shoots's second argument in favor of Article III standing involves the concept of informational injury.  In essence, he alleges that iQor's failure to provide him with a stand-alone disclosure deprived him of his right to receive information in the statutorily mandated format, causing concrete injury.  (Pl.'s Mem. in Opp. at 17.)  Although Shoots apparently concedes that he suffered no additional, actual harm from this failure, he contends that the procedural violation alone constitutes an injury in fact for standing purposes.  (*Id.* at 20.)  In support of this contention, Shoots directs the Court's attention to *Spokeo* itself.  There, he notes, the Supreme Court expressly identified two cases based solely on informational injury—*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), and

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)—as alleging the sort of harm sufficient to meet the concrete injury test. 136 S. Ct. at 1549. Because he too claims an informational injury, it follows—ipso facto—that his allegations are constitutionally sufficient for standing purposes.

While *Spokeo* certainly does indicate that informational injuries may, without more, give rise to constitutional standing, it does not automatically follow that Shoots's alleged injuries are of a kind with those the Supreme Court had in mind. A brief overview of the two cases cited by the Court in *Spokeo* as representative of a successful informational injury claim is illustrative of this point.

First, in *Public Citizen*, the Court considered a challenge to the Department of Justice's practice of relying on confidential reports prepared by the American Bar Association ("ABA") in vetting potential judicial nominees. 491 U.S. at 443-45. The plaintiffs argued that this relationship between the Justice Department and the ABA made the latter an "advisory committee" under the Federal Advisory Committee Act, and that therefore it was required to make its minutes, records, and reports open to public scrutiny. *Id.* at 447. Plaintiffs contended that their inability to access records to which they were entitled by law harmed their ability to monitor the judiciary. *Id.* at 449. The Court agreed with plaintiffs on this basis, finding that they had standing under Article III because they had been denied access to information that the law required be made available to them. According to the Court, the "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.*

14

The Court was motivated by substantially similar grounds in *Akins*—the second case cited in *Spokeo*. There, the Court held that a group of voters had standing to contest a determination by the Federal Election Commission that the American Israel Public Affairs Committee ("AIPAC") was not a "political committee" for purposes of the Federal Election Campaign Act, and thus did not need to make disclosures regarding its membership, contributions, and expenditures. 524 U.S. at 13-14. In so holding, the Court reasoned that "[t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires AIPAC make public." *Id.* at 21. This failure to provide statutorily-required information was, in the Court's view, a concrete injury. *Id.*

Assessed in tandem, these cases clearly demonstrate that the Court's concern in the realm of informational injury has been with the *deprivation* of information to which the plaintiff is otherwise entitled.[2] The D.C. Circuit has recently developed a two-part

---

[2] Plaintiff also contends that his case is analogous to the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the Court determined that a housing discrimination "tester" had Article III standing because he had been given deliberately erroneous information regarding the availability of an apartment, in violation of the Fair Housing Act. 455 U.S. at 368. According to the Court, even though the tester had no "intention of buying or renting a home" and "fully expect[ed] that he would receive false information," the fact that he had "been the object of a misrepresentation made unlawful under [the statute]" gave rise to an injury in "precisely the form the statute was intended to guard against." *Id.* at 373-74. *Havens* is readily distinguishable from the present matter, however. In *Havens* the statute entitled the housing tester to information which he did not receive—specifically that apartments were available for rent. Thus, he was entirely deprived of the information he was entitled to, whether or not he expected that result. In contrast, Shoots argues not that he was deprived of information to which

framework for assessing standing cases based on informational injury that—in this Court's view—properly summarizes the lessons from *Public Citizen*, *Akins*, and *Spokeo*. *See Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). There, the court declared that "[a] plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Id.* In the present matter, Shoots's informational injury claim would fail at both steps of the test. Nowhere in the Complaint does he allege that he was actually deprived of information to which he was entitled by statute. Indeed, stripped of its extraneous information, the Applicant Disclosure contained all the information which 15 U.S.C. § 1681b(b)(2)(A) requires be disclosed.

Even if some deprivation could be held to have occurred, however, it is doubtful that Shoots suffered "the type of harm Congress sought to prevent" by requiring a stand-alone disclosure. Presumably, the purpose of that requirement was (1) to make clear to prospective employees that a consumer report might be obtained, and (2) prevent that disclosure from being hidden among other, innocuous provisions. Because Shoots does not allege that he was unaware iQor intended to procure a background check, or claim that he was somehow confused by the inclusion of extraneous information, his

---

he was entitled, but merely that it was presented in a statutorily impermissible form. That distinction is sufficient to vitiate any relevant similarities between his case and *Havens*.

informational injury is exactly the sort of "bare procedural violation" that is *not* found in *Public Citizen* or *Akins*.

As if foreseeing the Court's conclusion, however, Shoots contends that under *Spokeo*, an informational injury sufficient to confer standing need not allege *any* specific deprivation of information—merely delivering statutorily mandated content in a format inconsistent with the technical requirements of the law would suffice.  *See* 136 S. Ct. at 1549 ("In other words, a plaintiff in [an informational injury] case need not allege any *additional* harm beyond the one Congress identified.") (emphasis original).  Such an expansive reading would indeed require finding an injury in fact here.  But the Court sees nothing in the Court's brief dictum that requires Shoots's preferred reading, and adopting that reading would be inconsistent with the rest of *Spokeo*.[3]

Importantly, this Court's position is apparently in accord with the Eighth Circuit's own views on the matter.  In the recent case of *Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737, 2016 WL 4698283 (8th Cir. Sept. 8, 2016), that court considered whether plaintiff had standing to bring suit under the Cable Communications Policy Act, which requires, in relevant part, that a "cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order."   2016 WL 4698283, at *1 (quoting 47

---

[3] The Court doubts, for instance, that the Court meant to be read as saying that a "bare procedural violation, divorced from any concrete harm" is insufficient to give rise to Article III standing in every instance—except one involving information delivery. *Spokeo*, 136 S. Ct. at 1549.

U.S.C. § 551(e)).  Plaintiff had learned that, three years after he had canceled his cable services, the defendant still retained all of his personally identifiable information.  *Id.*  On this basis, he filed suit, alleging that the defendant's retention of his information without a permissible reason to do so violated his rights and the rights of a putative class.  *Id.*  Importantly, plaintiff argued that the mere violation of his statutory rights constituted an injury in fact sufficient to establish Article III standing, regardless of whether he could show "actual injury" arising from the retention of his personal information.  *Id.* at *4.  In support of this contention, he cited to two Eighth Circuit cases—*Hammer v. Sam's East, Inc.*, 754 F.3d 492 (8th Cir. 2014) and *Charvat v. Mut. First. Fed. Credit Union*, 725 F.3d 819 (8th Cir. 2013)—which had held that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*."  *Hammer*, 754 F.3d at 498 (citing *Charvat*, 725 F.3d at 822) (emphasis original).  Of note, in the present matter— and writing before *Braitberg* was decided—Shoots also cited repeatedly to these cases as analogous to his own claim, and supportive of his conclusion that a technical violation was sufficient to give rise to an Article III informational injury.  (*See, e.g.*, Pl.'s Mem. in Opp. at 20-21.)

Fatally for the plaintiff in *Braitberg*—and now also for Shoots—the Eighth Circuit recognized that "[i]n *Spokeo* . . . the Supreme Court rejected this absolute view and superseded our precedent in *Hammer* and *Charvat*."  *Braitberg*, 2016 WL 4698283, at *4.  The Eighth Circuit acknowledged that the *Spokeo* Court had identified "two examples in which plaintiffs were unable to obtain information that Congress had decided to make public as statutory violations that also established injury in fact," *id.*, but then

recognized that "a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'"  *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).  By recognizing—without qualification—that *Spokeo* had superseded *Hammer* and *Charvat*, the Eighth Circuit has seemingly also recognized that any claim must have some level of actual injury to survive the Article III standing inquiry.  *See Braitberg*, 2016 WL 4698283, at *4.

Here, for the reasons specified, Shoots cannot meet that burden.  While the Court does not suggest that a failure by a defendant to comply with a statutory method of disclosure can *never* rise to the level of an injury sufficient to confer standing, more must be alleged than is found in the present Complaint.  If Shoots had contended somehow that iQor's failure to provide him with a stand-alone disclosure had amounted to a constructive deprivation of information—such as by impeding his ability to understand what he was signing, or by hiding important information in a thicket of legalese—this might well be a different case.  But without such allegations, Shoots's injury—even if styled an "informational" one—is nothing more than technical, and insufficient to meet the requirements either of *Braitberg* or *Spokeo*.  *Cf. Nokchan*, 2016 WL 5815287, at *6-9.

## IV.    CONCLUSION

For the reasons discussed above, the Court concludes that Shoots does not have Article III standing to bring his FCRA claim, and, accordingly, the Court cannot exercise jurisdiction over the matter.  Thus, Count XI of Plaintiffs' Third Amended Complaint must be dismissed.  Because the basis for this decision is jurisdictional, however, the

dismissal necessarily is without prejudice.  *Cty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464-65 (8th Cir. 2004).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's Motion to Dismiss [Doc. No. 295] is **GRANTED**; and

2.      Count XI of Plaintiffs' Third Amended Complaint [Doc. No. 294] is **DISMISSED** without prejudice.

Dated: October 18, 2016                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge