## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Paris Shoots, Jonathan Bell, Maxwell
Turner, Tammy Hope, Phillipp
Ostrovsky, Brenda Brandt, Anissa
Sanders, Najai McCutcheon,
and Michael Chavez, on behalf of
themselves, the Proposed Rule 23 Classes,
and others similarly situated,

    Court File No. 0:15-cv-00563-SRN-SER

        Plaintiffs,

v.

iQor Holdings US Inc.,

        Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

---

## INTRODUCTION

Plaintiffs Paris Shoots, Jonathan Bell, Maxwell Turner, Tammy Hope, Sophia Ward, Phillipp Ostrovsky Brenda Brandt, Anissa Sanders, Denise Duffie-McCants, and Michael Chavez (collectively, "Plaintiffs") and Defendant iQor Holdings US, Inc. ("Defendant") have reached a proposed settlement of Plaintiffs' class and collective action claims for unpaid wages arising under the Fair Labor Standards Act ("FLSA") and the wage-and-hour laws of eight states. Plaintiffs respectfully request that the Court preliminarily approve the proposed settlement.

As detailed below, the settlement is the product of arm's-length negotiations by informed counsel, assisted by a well-respected mediator. The settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability, damages, and class certification under the FLSA and the relevant state laws. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary settlement approval; (2) certify the proposed Rule 23 State Law Settlement Classes for the purposes of settlement; (3) appoint Plaintiffs' Counsel as Class Counsel; (4) appoint Angeion Group as settlement administrator; (5) approve, and direct distribution of, the three proposed settlement notices to the Settlement Class Members; (6) schedule a deadline for Plaintiffs' motion for attorneys' fees, costs, service awards, and final approval; and (7) schedule a hearing on same.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.   THE PARTIES AND CLASS REPRESENTATIVES

iQor provides outsourcing and customer support services through call centers in the United States and around the world. (*See* 4th Am. Compl. ¶ 32.) The Plaintiffs and class members are current and former employees of Defendant who worked as hourly-paid Contact Center Agents in the United States. (*See id.* ¶¶ 2-21.)

Each of the Named Plaintiffs and proposed Rule 23 Class Representatives worked for Defendant as Contact Center Agents during the timeframes relevant to this case.[1]

---

[1] Plaintiffs Sophia Ward and Denise Duffie-McCants are not designated as Named Plaintiffs in the Fourth Amended Complaint, but previously agreed to serve as Class Representatives for Plaintiffs' Motion for Class Certification, and are proposed again for the purpose of Plaintiffs' Motion for Preliminary Settlement Approval.

Paris Shoots worked in iQor's Plymouth, MN call center from approximately April 2014 to June 2014. (Shoots Decl. ¶ 2, ECF No. 363-10.) Jonathan Bell worked in the Buffalo, NY call center from approximately July 2011 to May 2014. (Bell Decl. ¶ 2, ECF No. 363-10.) Maxwell Turner worked in the Buffalo, NY call center from approximately July 2013 to the present. (Turner Decl. ¶ 2, ECF No. 363-10.) Tammy Hope worked in iQor's Columbus, OH call center from approximately November 2011 to November 2013. (Hope Decl. ¶ 2, ECF No. 363-10.) Sophia Ward worked in Tempe, AZ from approximately August 2012 to early 2015. (Ex. 9, Ward Dep. 12:6-10, 31:2-13, ECF No. 363-9.) Brenda Brandt worked out of the Colorado Springs, CO call center from approximately June 2013 to October 2014. (Brandt Decl. ¶ 2, ECF No. 363-10.) Anissa Sanders has worked in the Charlotte, NC call center for over ten years. (Sanders Decl. ¶ 2, ECF No. 363-10.) Denise Duffie-McCants worked in Charleston, SC from approximately 2010 to October 2014. (Ex. 4, Duffie-McCants Dep. 6:22-12:7, ECF No. 363-4.) Michael Chavez worked in the Simi Valley, CA from approximately September 2009 to November 2014. (Chavez Decl. ¶ 2, ECF No. 363-10.)

II.   **THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY, CONTESTED CLASS CERTIFICATION BRIEFING, AND MULTIPLE MEDIATION SESSIONS BEFORE REACHING A CLASS-WIDE SETTLEMENT AGREEMENT**

This action was filed in Minnesota state court on January 21, 2015, asserting claims for unpaid wages under Minnesota law stemming from iQor's TimeQey timekeeping system. (*See* Notice of Removal, ECF No. 1.) Defendant removed the case on February 20, 2015. (*Id.*) Plaintiffs amended the Complaint to add overtime claims

under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), as well as Rule 23

class action claims for overtime and other wages under New York, Ohio, and Arizona

law. (Am. Compl., ECF No. 19.) Plaintiffs later added state law claims under Colorado,

North Carolina, South Carolina, and California state law.  (*See* 2nd Am. Compl., ECF

No. 121; 3d Am. Compl., ECF No. 294.) The operative Complaint is the Fourth

Amended Complaint. [2] (4th Am. Compl., ECF No. 336.) Defendant denied Plaintiffs'

allegations. (*See* Answer, ECF No. 339.)

On June 26, 2015, Plaintiffs moved for conditional certification of their FLSA

overtime claims. (Motion, ECF No. 79.) The motion was granted, and notice was issued

to all current and former Contact Center Agents who used TimeQey for timekeeping

purposes at any time from October 19, 2012 to December 31, 2014. (Order, ECF No. 142

at 53-54, 63.) A total of 3,545 workers filed consent forms to join the action pursuant to

29 U.S.C. § 216(b). (*See generally* Dkt.; Srey Decl. ¶ 2.)

The Parties engaged in extensive discovery from June 2016 through July 2017,

allowing both Parties to evaluate the strengths and weakness of the claims and defenses at

issue. Plaintiffs deposed Defendant's Rule 30(b)(6) designee and multiple executives,

interviewed many of the Opt-In Plaintiffs, and obtained tens of thousands of pages of

documents from Defendant. (Srey Decl. ¶ 3.) Defendant deposed multiple Plaintiffs, and

served discovery on 100 Opt-in Plaintiffs. (*Id.*) Both Parties analyzed Defendant's payroll

---

[2] Plaintiffs also brought claims under the Fair Credit Reporting Act. (4th Am. Compl, ECF No. 33.) On October 18, 2016, the Court issued an order granting Defendant's motion to dismiss those claims. (ECF No. 314.) They are not at issue here.

and time data to determine potential damages, and engaged expert witnesses to assist with the analysis. (*Id.*)

On August 18, 2017, Plaintiffs filed a motion for certification of their state law claims pursuant to Fed. R. Civ. P. 23. (ECF No. 353.) On the same date, Defendant filed a motion for decertification of the FLSA Collective. (ECF No. 247.) The Court heard oral argument on September 29, 2017. (ECF No. 409.) On March 27, 2018, the Court issued an Order denying Plaintiffs' motion for Rule 23 class certification, and granting in part and denying in part Defendant's motion for FLSA decertification.[3] (ECF No. 430.) The Court stayed its Order for sixty (60) days to allow sufficient time for the FLSA Opt-in Plaintiffs and the putative Rule 23 class members to evaluate their options concerning potential re-filing of their claims. (ECF No. 435.)

On July 9, 2018, after extensive negotiations, the Parties reached an agreement to resolve the case and signed a Memorandum of Understanding. (*See* ECF No. 454.) The Court subsequently vacated all remaining case deadlines. (ECF No. 456.) The Parties finalized the Settlement Agreement on October 17, 2018. (Srey Decl. ¶ 4.)

The Parties settlement is the product of extensive arm's-length negotiations aided by well-respected neutrals over the course of multiple mediation sessions. Early on, on May 19, 2016, the Parties attended a mediation session with mediator Michael E. Dickstein in New York, New York. (*Id.* ¶ 5.) Near the close of discovery, the Parties

---

[3] On April 11, 2018, Defendant filed a motion to certify certain aspects of the Court's decertification Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 444.) The Court denied the motion. (ECF No. 447.)

agreed to a second mediation session. (*Id.*) The Parties engaged mediator Joan S.

Morrow, and scheduled a mediation session to take place on May 31, 2017 in Reston,

Virginia. (*Id.*) After pre-mediation discussions, the Parties decided to postpone the

session. (*Id.*) Later, following oral argument on the motions for class certification and

decertification, the Parties again agreed to a session with Ms. Morrow on December 19,

2017, in Richmond, Virginia. (*Id.*) Although a settlement was not reached at that time,

the Parties were able to significantly narrow the gap between their respective positions

and subsequently reached an agreement through a series of follow-up discussions through

their respective counsel. (*Id.*)

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   <u>The Parties Stipulate to Class Certification Under Fed. R. Civ. P. 23 for the Purposes of Settlement</u>

The final and fully-executed Settlement Agreement is attached as Exhibit 1 to the

Declaration of Rachhana T. Srey. The Parties intend to resolve the claims of all members

of the FLSA Collective (i.e., all Opt-in Plaintiffs), as well as all members of the asserted

Rule 23 Classes. As set forth above, the Court previously conditionally certified the

following FLSA Collective pursuant to 29 U.S.C. § 216(b): "All current and former iQor

Contact Center Agents who used TimeQey for timekeeping purposes at any time from

October 19, 2012 to December 31, 2014." (Order, ECF No. 142 at 53-54, 63.) The

settlement covers all 3,545 Opt-in Plaintiffs. (Settlement Agreement ¶ 22.)

The Parties have further stipulated to certification of eight separate Rule 23 classes

for the purposes of settlement, consistent with the classes proposed in Plaintiffs' previous

motion for class certification. These classes are comprised of individuals who worked in the following states: Arizona, California, Colorado, Minnesota, New York, North Carolina, Ohio, and South Carolina. (*Id.* ¶ 28.) There are 16,720 total members of the proposed Rule 23 State Law Settlement Classes. (*Id.* ¶ 22.)

### B. The Settlement Amount and Initial Allocation of Funds

The Settlement Agreement resolves the claims of the FLSA Collective and Rule 23 State Law Classes for a total of $8,750,000.00 ("Gross Settlement Amount"). (Settlement Agreement ¶ 21.) The sum of the Gross Settlement Amount remaining after subtracting: (a) Class Counsel's attorneys' fees and costs; (b) Plaintiff service payments; (c) a contingency fund; (d) a payroll tax fund; and (e) settlement administration costs, will make up the "Net Allocation Fund." (*Id.* ¶ 22.) The Net Allocation Fund will be allocated to Participating Class Members. (*Id.* ¶ 23.)

The preliminary Net Allocation Fund will be no less than $4,850,333. (Srey Decl. ¶ 6.) To calculate each Settlement Class Member's *pro rata* settlement allocation, Plaintiffs' Counsel performed a detailed and comprehensive damages analysis. (*Id.*) For each Settlement Class Member, the analysis considered: (1) the number of eligible weeks the Settlement Class Member worked as a Contact Center Agent during the applicable statutory period(s); (2) the Settlement Class Member's individual payroll and timekeeping records provided by Defendant; (3) an analysis of each individual's weekly hours worked; (4) the available remedies for each Settlement Class member under the FLSA and/or the applicable laws of the state in which they worked; and (5) a weighting of each Settlement Class Member's federal and state claims based upon risk of loss on

the merits and the class certification risk of the relevant state law claims. (*Id.*) From this analysis, Plaintiffs' Counsel calculated an individual *pro rata* percentage for each Settlement Class Member, and then applied that percentage to the Net Allocation Fund to determine each Settlement Class Member's individual settlement offer. (*Id.*)

As noted above, the Net Allocation Fund is determined by deducting the following items from the Gross Settlement Amount. First, the Agreement allows Plaintiffs' Counsel to request an award of attorneys' fees in an amount up to $2,916,666.66 (one-third of the total settlement fund). (Settlement Agreement ¶¶ 32-34.) Counsel will also seek reimbursement of their litigation costs of up to $300,000. (*Id.*) If the Court approves fees or costs in an amount less than requested, the remaining amounts will be reallocated in the final settlement allocations on a *pro rata* basis. (*Id.*)

Second, Plaintiffs' Counsel will also request service payments to the Named Plaintiffs and to Plaintiffs who participated significantly in discovery in recognition of their time and effort in securing the proposed settlement. (*Id.* ¶¶ 43-44.) If any lesser amount is approved by the Court, the difference will be reallocated in the final settlement allocations on a *pro rata* basis. (*Id.*)

Third, the Parties have agreed to a contingency fund of up to $250,000, the purpose of which is to effectuate the purposes of settlement, including to resolve the claims of any Settlement Class Members who timely opt-out or reject their settlement offer and later assert claims. (*Id.* ¶ 38-42.) The fund starts at $50,000, with $7,500 added for each increment of five Settlement Class Members who opt-out or reject their settlement offers during the notice period. (*Id.*) In no event will the contingency fund

exceed $250,000. (*Id.*) Any unused portion of the fund will be designated as *cy pres* and donated to two charitable organizations. (*Id.*)

Fourth, $250,000 will be set aside in a payroll tax fund to cover the employer's share of payroll taxes that arise from payments under the Settlement. (*Id.* ¶ 37.) Any residual amount in the payroll tax fund not required for such employer payroll tax payments will be reallocated on a *pro rata* basis. (*Id.*)

Finally, $125,000 will be set aside to pay for expenses incurred in administering the settlement, and to pay for the services of Angeion Group, a qualified and well-regarded settlement administrator who will administer the settlement. (*Id.* ¶ 36.) Any remaining amounts will be reallocated on a *pro rata* basis. (*Id.*)

### C.   Notice of Settlement to the Settlement Class Members and Release of Claims

The Parties agree that three different settlement notices will be provided: one for distribution to members of the FLSA Collective (the "FLSA Notice"); a second for distribution to members of the Rule 23 State Law Settlement Classes (the "Rule 23 Notice"); and a third hybrid notice for distribution to members of the FLSA Collective who are also members of one of the Rule 23 State Law Settlement Classes ("Hybrid Notice"). (*See* Settlement Agreement ¶¶ 47-57 & Exs. 1-3.)

- The **FLSA Notice** will inform each member of the FLSA Collective of the ninety (90) day period ("Notice Response Deadline") to reject in writing his/her individual settlement offer and request a withdrawal of their opt-in consent form. Any Opt-in Plaintiffs who timely reject their individual settlement offers and request a withdrawal of their opt-in consent forms will be dismissed without prejudice and he/she will have thirty (30) days within which to file a subsequent action in order to preserve consent-based tolling. Failure to re-file his/her claim

within this timeline will result in his/her forfeiture of consent-based tolling, but not his/her claim.

- The **Rule 23 Notice** will inform each Member of the Rule 23 State Law Settlement Classes of the Notice Response Deadline and his/her option to do nothing to accept the offer, or to opt out of the Rule 23 State Law Settlement Classes. Members of the Rule 23 State Law Settlement Classes who wish to be excluded from the settlement must complete and sign a written request for exclusion in a form described in the Rule 23 Notice and deliver that request to Class Counsel no later than the Notice Response Deadline ("Rule Opt-Outs"). Rule 23 Opt-Outs will receive no settlement benefits under this Settlement Agreement, will not be considered Participating Settlement Class Members, and will not be bound by any release set forth in this Agreement.

- The **Hybrid Notice** will inform each member of the FLSA Collective who is also a member of one of the Rule 23 State Law Settlement Classes of their options, consistent with both the FLSA Notice and the Rule 23.

(*Id.*)

The notices will be distributed, and the settlement process administered, by Angeion Group as described above. (*Id.* ¶¶ 53-54.) Any Participating Settlement Class Member who wishes to object to the settlement must file a written objection with the Court, with copies to Class Counsel and counsel for Defendant. (*Id.* ¶ 52.) All objections must be post-marked by no later than the applicable deadline. (*Id.*) Under the Agreement, Defendant has the right to withdraw from the settlement if the number of Settlement Class Members who reject their settlement offer or exclude themselves under Rule 23 exceeds 50 individuals. (*Id.* ¶ 57.)

In exchange for the monetary relief provided, the members of the FLSA Collective will release "all known and unknown claims for overtime compensation, minimum wages, compensable work, meal and rest break periods, liquidated damages, penalties,

and interest under the FLSA arising from the Participating Class Member's employment with Defendant up through December 31, 2014." (*Id.* ¶ 31.) The members of the Rule 23 State Law Classes will release "all known and unknown claims for overtime compensation, minimum wages, compensable work, meal and rest break periods, liquidated damages, penalties, and interest under the respective state law arising from the Participating Class Member's employment with Defendant up through December 31, 2014." (*Id.*)

### D.   The Final Distribution of Settlement Funds to the Settlement Class Members

If the settlement receives final approval, Defendant will deposit the Gross Settlement Amount within 31 days of the Settlement Effective Date or September 30, 2019, whichever is later. (*Id.* ¶ 62.) The administrator will then mail each Participating Class Member a settlement check. (*Id.* ¶ 66.) One third of the payment will be reported as wages for tax purposes with each Participating Settlement Class Member receiving an IRS Form W-2. (*Id.* ¶ 67.) In addition, one third of the settlement payment will constitute payment for liquidated damages, and one third will constitute penalties and/or interest; these amounts will be reported on an IRS Form 1099. (*Id.*) All amounts allocated as service payments will also be reported on an IRS Form W-2. (*Id.*)

Participating Settlement Class Members will have 90 days from the date of issuance of their settlement checks to deposit or cash them. (*Id.* ¶ 70.) Checks that have not been deposited or cashed within this period will be void. (*Id.* ¶ 71.) Funds allocated to Participating Settlement Class Members who do not cash their settlement checks will be

added to the contingency fund or, if the fund has already reached the maximum, added to the *cy pres* fund. (*Id.*)

## LEGAL ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context. *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993). The Eighth Circuit has held that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. v. Pulaski Cty. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). It is the "surety of settlement" that makes it a favored policy for dispute resolution as compared to the "unknown dangers and unforeseen hazards of litigation." *See In re Charter Commc'n, Inc.*, 2005 WL 4045741 at *4 (E.D. Mo. June 30, 2005) (internal citations omitted).

For the reasons set forth below, the Court should: (1) grant preliminary settlement approval; (2) certify the proposed Rule 23 State Law Settlement Classes for the purposes of settlement; (3) appoint Plaintiffs' Counsel as Class Counsel; (4) appoint Angeion Group as settlement administrator; (5) approve, and direct distribution of, the three proposed settlement notices to the Settlement Class Members; (6) schedule a deadline for Plaintiffs' motion for attorneys' fees, costs, service awards, and final approval; and (7) schedule a hearing on same.

I.     **CERTIFICATION OF THE STATE LAW CLASSES FOR THE PURPOSE OF SETTLEMENT IS APPROPRIATE**

Every class action must meet the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). A class action must also be maintainable under Rule 23(b). *See* Fed. R. Civ. P. 23(b). A proposed settlement class still must satisfy the requirements for class certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, in the context of settlement, the court need not inquire as to whether a trial of the action would be manageable on a class-wide basis. *Id.* ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *see also Dryer v. Nat'l Football League,* 2013 WL 5888231, at *8 (D. Minn. Nov. 1, 2013), *aff'd sub nom. Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) (manageability "not relevant in the certification of a settlement class").

Plaintiffs request that the Court certify the following Rule 23 State Law Settlement Classes:

> Arizona Settlement Class: All individuals employed by iQor as Contact Center Agents in Arizona who used TimeQey for timekeeping purposes at any time from April 3, 2014 to December 31, 2014.

> California Settlement Class: All individuals employed by iQor as Contact Center Agents in California who used TimeQey for timekeeping purposes at any time since February 21, 2013 to December 31, 2014.

> Colorado Settlement Class: All individuals employed by iQor as Contact Center Agents in Colorado who used TimeQey for timekeeping purposes at any time from April 3, 2012 to December 31, 2014.

> Minnesota Settlement Class: All individuals employed by iQor as Contact Center Agents in Minnesota who used TimeQey for timekeeping purposes at any time from January 21, 2012 to December 31, 2014.
>
> New York Settlement Class: All individuals employed by iQor as Contact Center Agents in New York who used TimeQey for timekeeping purposes at any time from April 3, 2009 to December 31, 2014.
>
> North Carolina Settlement Class: All individuals employed by iQor as Contact Center in North Carolina who used TimeQey for timekeeping purposes at any time from April 3, 2013 to December 31, 2014.
>
> Ohio Settlement Class: All individuals employed by iQor as Contact Center Agents in Ohio who used TimeQey for timekeeping purposes at any time from April 3, 2007 to December 31, 2014.
>
> South Carolina Settlement Class: All individuals employed by iQor as Contact Center Agents in South Carolina who used TimeQey for timekeeping purposes at any time from April 3, 2012 to December 31, 2014.

(Settlement Agreement ¶ 28.) The Court previously denied Plaintiffs' motion for class certification due to manageability concerns. (*See* Order, ECF No. 430 at 24-35.) The Court was concerned primarily with the fact that Plaintiffs sought certification of eight classes involving the laws of eight different states, and wished to proceed with a single trial for all classes. (*See* Order, ECF No. 27-35 & n.9.) The Court found that the various differences between the laws of each of these states would require "individualized legal and factual determinations," presenting manageability problems in a single trial, including potential jury confusion. (*See id.* at 33.) Because certification was denied under Rule 23(b)(3), the Court did not analyze the remaining requirements for class certification. (*See id.* at 35.)

Because the Parties have reached an agreement to resolve the matter without trial, the Court's manageability concerns have been adequately addressed. As set forth below, the requirements of Rule 23 are met, and this action may be certified for settlement purposes. To avoid burdening the Court with numerous documents that have already been filed, citations in this section of the brief are to Plaintiffs' previous motion for class certification and the supporting declarations and exhibits. (*See* ECF No. 362.)

### A.    Numerosity is Satisfied

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Rule 23 State Law Settlement Classes each contain between several hundred and several thousand potential class members: MN (1,837); AZ (2,016); CA (491); CO (856); NC (2,542); NY (932); OH (3,743); SC (3,451). (*See* ECF No. 363 at 29.)

### B.    Commonality is Satisfied

The commonality requirement of Rule 23(a)(2) requires "questions of law or fact common to the class." All questions need not be common—"even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). (internal quotation marks and modifications omitted). What matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350. There must be a contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Commonality is satisfied. As set forth in detail in Plaintiffs' motion for class certification, this case involves one group of employees—Contact Center Agents—who were subject to one common employment practice—the TimeQey system. The way that Agents use TimeQey does not differ depending on their particular job title, call center, or client. (ECF No. 362 at 30.) Plaintiffs commonly allege that iQor's TimeQey system resulted in unpaid wages to all class members. (*Id.*)

Although the Court questioned whether the laws of the eight states at issue could be managed together in a single trial, in a settlement context, there are nevertheless questions of law and fact common to the claims of each of the state law classes when they are considered independent of one another. For each individual state, these questions include: (1) whether iQor's TimeQey system resulted in a systemic denial of straight-time and/or overtime wages to Contact Center Agents; (2) the availability of a substantive right to unpaid straight-time wages under state law; (3) whether iQor kept adequate records of the hours worked by Contact Center Agents; (4) whether iQor knew or should have known that Contact Center Agents worked unpaid time; (5) whether any violations of state law were willful and not in good faith; and (6) the proper measure of damages. (*See generally* ECF No. 362 at 22-27, 29-35 (summarizing relevant state laws and identifying common question of law and fact).)

## C.   <u>Typicality is Satisfied</u>

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[Typicality is] satisfied if the claims or defenses of the representatives and the members of the class stem from a

single event or are based on the same legal or remedial theory." *Paxton v. Union Nat.*

*Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982). "This is true even if there are '[f]actual

variations in the individual claims.'" *Cruz*, 2015 WL 6671334, at *10 (quoting *Alpern v.*

*UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Typicality is satisfied. Plaintiffs have identified at least one proposed Class

Representative for each of the eight Rule 23 State Law Settlement Classes: Sophia Ward

(Arizona); Michael Chavez (California); Brenda Brandt (Colorado); Paris Shoots

(Minnesota); Jonathan Bell (New York); Maxwell Turner (New York); Anissa Sanders

(North Carolina); Tammy Hope (Ohio); and Denise Duffie-McCants (South Carolina).

For each of their respective states, the Class Representatives seek to remedy the same

legal violations—straight-time and/or overtime wages—under the same state law legal

theories, as the members of the classes that they seek to represent. (*See* Fourth Am.

Compl., ECF No. 336.)

### D.   <u>Adequacy is Satisfied</u>

The adequacy inquiry ensures that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The focus of Rule

23(a)(4) is whether: (1) the class representatives have common interests with the

members of the class, and (2) whether the class representatives will vigorously prosecute

the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d

552, 562-63 (8th Cir. 1982). The inquiry, "serves to uncover conflicts of interest between

the named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521

U.S. 591, 626 (1997).

There is no indication of antagonizing interests. The proposed Class

Representatives and the classes share a common interest in recovering unpaid wages. The

Class Representatives have demonstrated a commitment to the class by assisting with the

preparation of the Complaint, executing declarations, and/or sitting for their depositions.

(Srey Decl. ¶ 11.) They have maintained regular contact with Counsel, and are committed

to representing the class. (*Id.*)

Counsel will likewise fairly and adequately represent the classes. Plaintiffs are

represented by attorneys from Nichols Kaster, PLLP, and Teske, Katz, Kitzer & Rochel,

PLLP. Counsel from Nichols Kaster are qualified, experienced, and have vigorously

litigated the case on behalf of the classes. (Srey Decl. ¶¶ 13-17.) They have been class or

collective counsel in numerous class and collective actions around the country. (Srey

Decl. ¶¶ 13-14 & Ex. 2) Similarly, the law firm of Teske Katz Kitzer & Rochel, PLLP

has significant experience and skill representing plaintiffs in class and collective

litigation. (*See* Teske Decl.) Accordingly, the Court should appoint Nichols Kaster and

Teske Katz as class counsel. *See* Fed. R. Civ. P. 23(g) (listing relevant considerations).

### E.    <u>Predominance and Superiority are Satisfied</u>

Under Rule 23(b)(3), a class may be certified if "questions of law or fact common

to class members predominate over any questions affecting only individual members."

Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*,

521 U.S. 591, 623 (1997). Individual questions are those where class members "will need

to present evidence that varies from member to member," while common questions are

18

those where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Before certifying a class action under Rule 23(b)(3), the Court must also consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (listing considerations).

Although the Court found that manageability issues would prevent this case from proceeding to verdict in a single trial, this should not prevent certification for the purpose of settlement. Because the proposed settlement was reached specifically to avoid the need for further litigation and trial, there is no risk of jury confusion. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"); *see also Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) (approving class action involving laws of eight different states).

As set forth above, there are common questions of fact and law for each of the individual states at issue. Even if the potential for a jury trial were taken into consideration at the settlement stage, Plaintiffs have valid arguments for managing any risk of jury confusion. For example, if the case were to proceed to trial, Plaintiffs could request a separate trial for each of the individual state classes, with individual verdict forms and jury instructions for each state at issue. Plaintiffs could likewise request that the trials be bifurcated between liability and damages.

The procedural posture of this litigation also supports superiority. Given the Court's order denying certification of the Rule 23 State Law Classes and partially decertifying the FLSA Collective, the alternative to a global resolution of this matter would be the filing of thousands of individual cases (or dozens of group actions) on behalf of the individuals affected by the alleged practices at issue. The Parties' agreement to resolve the matter without clogging the dockets of multiple federal and/or state courts is unquestionably preferable.

## II.   THE COURT SHOULD GRANT PRELIMINARY SETTLEMENT APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement that will bind absent class members. This involves a two-step process. At the preliminary approval stage, the Court must first determine whether the proposed settlement falls within the range of possible approval, such that notice of the settlement should be given to class members and a hearing on whether to grant final approval should be scheduled. *See* 4 Newberg on Class Action § 13:10 (5th ed.); Manual for Complex Litigation, Fourth § 21.632 (2013). Once class members have had an opportunity to opt-out or object, the Court then makes a final determination regarding whether the settlement is a "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The decision whether to approve a class action settlement falls within the discretion of the court. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015).

Courts must consider four factors in deciding whether to approve a Rule 23 class action settlement: (1) the merits of the plaintiff's case, weighed against the terms of the

settlement; (2) the defendant's financial condition; (3) the complexity and expense of

further litigation; and (4) the amount of opposition to the settlement.[4] *Keil v. Lopez*, 862

F.3d 685, 693 (8th Cir. 2017). Preliminary approval should be granted if the proposed

settlement is "fair, reasonable and adequate, free of collusion or indicia of unfairness, and

within the range of possible final judicial approval." *Smith v. Questar Capital Corp.*,

2015 WL 1963019, at *4 (D. Minn. Apr. 30, 2015).[5]

Courts apply similar criteria when considering whether to approve the settlement

of collective actions under the FLSA. Courts evaluate whether the settlement "represents

a fair compromise of a bona fide wage and hour dispute." *Harris v. Chipotle Mexican

Grill, Inc.*, 2018 WL 617972, at *4 (D. Minn. Jan. 29, 2018) (citation omitted). In

---

[4] The amount of opposition, if any, cannot be measure at this stage since notice has not yet been sent.

[5] Amendments to Rule 23(e) are expected to go into effect in December 2018 clarifying the standard for settlement approval. *See* http://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments (last visited October 5, 2018). The amended rule would require the court to consider, prior to granting preliminary approval, whether the court would likely be able to grant final approval of proposal. This requires consideration of whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *See* http://www.uscourts.gov/sites/default/files/2018-04-26-congressional_package_final_posted_to_the_website_0.pdf (last visited October 23, 2018) at 8-10 (proposed Rule 23(e)).

Because the proposed amendment to Rule 23 is likely to become effective, counsel have ensured that each of the factors identified above are sufficiently addressed in their analysis of whether preliminary approval should be granted.

evaluating fairness, courts consider: "(1) the stage of the litigation and the amount of discovery exchanges, (2) the experience of counsel, (3) the probability of the plaintiffs' success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." (*Id.* (quoting *Netzel v. West Shore Group, Inc.*, 2017 WL 1906955, at * 2 (D. Minn. May 8, 2017)). Here, the relevant considerations weigh in favor of preliminary approval.

### A.     A Bona Fide Dispute Exists Between the Parties

A settlement represents a bona fide dispute if it "reflects a reasonable compromise over issues actually in dispute as employees may not waive their entitlement to minimum wage and overtime pay under the FLSA." *Netzel v. W. Shore Grp., Inc.*, 2017 WL 1906955, at *4 (D. Minn. May 8, 2017). Here, Plaintiffs claim that the TimeQey system led to Contact Center Agents being denied straight-time and overtime wages. Defendant specifically denies that Plaintiffs are owed any wages under the FLSA or state laws, and has consistently asserted that its timekeeping system was valid. Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with continued litigation, the Parties agree that a compromise is appropriate. *See Lynn's Food Stores, Inc. v. U. S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

**B.** **The Parties Engaged in Extensive Fact Discovery**

The amount of discovery that has taken place in this action also weighs in favor of preliminary approval. *See Harris*, 2018 WL 617972, at *4 (granting settlement approval and noting that the parties had "reached a settlement after extensive discovery"); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) "(Before reaching a settlement, the parties conducted extensive discovery and factual investigation, participated in substantial motion practice, subpoenaed and deposed third parties, and engaged experts[.]"). As set forth above, the Parties engaged in extensive discovery relating to the FLSA and state law claims, allowing both Parties to evaluate the strengths and weakness of their respective positions. Plaintiffs deposed Defendant's corporate designee and multiple executives, interviewed many of the Opt-In Plaintiffs, and obtained tens of thousands of pages of documents from Defendant. Defendant deposed multiple Plaintiffs, and served discovery on 100 Opt-in Plaintiffs. Both Parties analyzed Defendant's payroll and time data to determine potential damages, and engaged expert witnesses to assist with the analysis. Indeed, at the time of the Court's class certification order, discovery was closed and the case was ready for dispositive motions and trial.

**C.** **The Proposed Settlement is the Product of Extensive, Arm's-Length Negotiations Between Experienced Counsel**

The proposed settlement was the product of extensive, arm's-length negotiations, with experience and informed counsel on both sides. Plaintiffs' Counsel is experienced in wage and hour and class action matters, and has reasonably assessed the risks of

continued litigation and benefits of settlement. Defendant's Counsel is part of an international law firm likewise experienced in wage-and-hour class and complex litigation. The Parties engaged in two mediation sessions with two well-respected mediators in an effort to resolve their dispute. These mediation sessions were accompanied by months of additional negotiations that ultimately led to the final agreement that is before the Court. This raises a presumption of prudence. *See, e.g.*, *In re Zurn Pex Plumbing Products Liab. Litig.*, 2013 WL 716088, at \*6 ("The settlement here is presumptively valid, given the arm's-length negotiations supervised by [a mediator], the extensive discovery conducted over more than five years of litigation, the substantial experience of both plaintiff and defense attorneys, and the absence of even a single objection to the settlement.").

### D.   The Proposed Settlement is Reasonable in Light of the Probability of Success on the Merits and the Risks of Continued Litigation

The most important factor in deciding whether a settlement is "fair, reasonable and adequate" is the balancing of the strength of the plaintiff's case against the terms of the settlement. *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1079 (D. Minn. 2009); *see also In re Wireless Tel. Fed. Cost Recov. Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Here, the Parties reached an agreement to resolve this action for a substantial sum of $8,750,000.00. There is no "claims-made" aspect to the settlement. Rather, the entire Net Settlement fund of at least $4,850,333 will be distributed to the class members who do not opt-out. (Settlement Agreement ¶ 35.)

The settlement allocation treats class members equitably relative to each other. In negotiating and allocating the settlement amount, Plaintiffs' Counsel performed a detailed and comprehensive damages analysis. (Srey Decl. ¶ 6.) For each Settlement Class Member, the analysis considered: (1) the number of eligible weeks within the applicable statutory period(s) that the Settlement Class Member worked as a Contact Center Agent; (2) the Settlement Class Member's individual payroll and timekeeping records provided by Defendant; (3) an analysis of each individual's weekly hours worked; (4) the available remedies for each Settlement Class member under the FLSA and/or the applicable laws of the state in which they worked; and (5) a weighting of each Settlement Class Member's federal and state claims (as applicable) based upon risk of loss on the merits and the class certification risk of the relevant state law claims. (*Id.*) From this analysis, Plaintiffs' Counsel calculated an individual *pro rata* percentage for each Settlement Class Member, and then applied that percentage to the Net Allocation Fund to determine each Settlement Class Member's individual settlement offer. (*Id.*)

The relief provided by the proposed settlement is reasonable, and in fact substantial, considering the probability of success on the merits and risks of continued litigation. *See George v. Uponor Corp.*, 2015 WL 5255280, at *7 (D. Minn. Sept. 9, 2015) ("In deciding on the merits, the Court need not 'go beyond an amalgam of delicate balancing, gross approximations, and rough justice.'") (citation omitted). The merits of this litigation were hotly contested by both sides. Early on in the case, iQor filed a motion for judgment on the pleadings seeking dismissal of Plaintiffs' claims for unpaid straight-time wages under Minnesota, Arizona, New York, and Ohio law. (Motion, ECF No. 85.)

Although the motion was denied, the Court declined to rule on the ultimate merits of the state law claims. (*See* Order, ECF No. 430 at 25-26.) The Parties also disputed liability as to Plaintiffs' FLSA claims. Although the Court indicated that Plaintiffs' federal claims for unpaid time in increments of 20 minutes or less were strong (Order, ECF No. 430 at 47-55), Defendant was prepared to appeal this decision to the Eighth Circuit (*see* Motion for Interlocutory Appeal, ECF No. 440).

Likewise, the Court decertified Plaintiffs' FLSA claims for unpaid time in increments of more than 20 minutes. (Order, ECF No. 430 at 55-57.) The Parties also disputed whether Defendant's alleged violations of law were willful, and whether the company acted in good faith. (*See* ECF No. 362 at 35-36; ECF No. 350 at 3-9.) Adding to the risk was the fact that the Court had denied class certification of the state law claims and granted partial decertification of the FLSA claims. (Order, ECF No. 430.) As set forth above, the alternative to settlement would be thousands of individual cases (or dozens of group actions). *See, e.g.*, *Brask v. Heartland Auto. Servs., Inc.*, 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006) ("Absent a global settlement, the resolution of this case would be followed by litigation of these twelve other cases.").

The proposed settlement will provide class members with settlement amounts ranging from $291 to over $6,000, and the gross settlement amount represents 46% of potential recovery on claims for time of 20 minutes or less, exclusive of interest and penalties. (Srey Decl. ¶¶ 7-8.) Given the probability of success and the risks of moving forward with litigation in numerous courts, the settlement is substantial.

**E.      The Expense of Further Litigation Weighs in Favor of Preliminary Settlement Approval**

Where continued litigation could involve a robust adversarial process, many months of additional pre-trial litigation, a trial, and potential appeals, the expense and duration of further litigation weighs in favor of settlement approval. *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009). Here, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court, possibly the Eighth Circuit, and many other state and/or federal courts. These proceedings would have significantly delayed any relief to the members of the Settlement Class, and might have resulted in no relief at all. The costs associated with continued litigation would have been significant to both parties, and weighs in favor of preliminary approval.

**F.      The Requests for Attorneys' Fees and Plaintiff Service Awards are Reasonable**

As part of this motion, Plaintiffs request that the Court set a deadline for Plaintiffs' Counsel to file a motion for attorneys' fees and costs that is 30 days before the expiration of the opt-out and objection period. *See Keil*, 862 F.3d at 705 (deadline for fee petition must be set prior to objection date). Counsel will request an award of attorneys' fees of not more than $2,916,666.66 (one-third of the amount recovered), and costs of up to $300,000. (Srey Decl. ¶ 18.) Under the proposed agreement, these amounts will be paid at the same time as the class members receive payment. (Settlement Agreement, ¶¶ 66-68.) Plaintiffs' requests are reasonable, and should be preliminarily approved. The Eighth Circuit has approved the use of the "percentage-of-recovery" method for awarding fees in

common fund cases such as this one. *See, e.g.*, *Netzel*, 2017 WL 1906955, at *8 (citing *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). Likewise, awards of one-third of the total amount recovered are not uncommon. *See id.* (collecting cases).

The Court should likewise preliminarily approve the proposed Plaintiff service awards, which will be formally requested along with attorneys' fees and costs. The awards range from $2,000 to $6,000 for the Named Plaintiffs and proposed Class Representatives, and $500 for those who gave depositions in discovery. (Settlement Agreement ¶ 43.) The proposed service awards are modest in comparison to the millions of dollars in relief made available to the Settlement Class, and well within the range of reasonable awards. As the Eighth Circuit recently noted, "courts in this circuit regularly grant service awards of $10,000 or greater." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming service award of $10,000); *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming settlement that included $10,000 service awards to named plaintiffs); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards from settlement of $17,000,000).

## G.    iQor's Financial Condition Does Not Impact the Settlement

Finally, courts also examine the compensation provided in the settlement and the defendant's ability to pay when determining whether the settlement is fair, reasonable and adequate. *See Petrovic*, 200 F.3d at 1152 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)). This factor also supports approval of the Settlement Agreement. There is no issue regarding Defendant's ability to make the agreed-upon

settlement payment, and the settlement amount was not discounted based on any perceived financial distress.

## III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

In addition to reviewing the substance of the Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

The Court should approve the proposed notice plan. As explained in detail above, the Parties have agreed to three separate notices for distribution to individuals who are members of a Rule 23 State Law Class, the FLSA Collective, or both groups. *See* Settlement Agreement, Exs. 1-3.) Each notice contains (1) a summary of the lawsuit; (2) a clear definition of the Settlement Classes; (3) a description of the benefits of the Settlement (including the amount allocated to each individual); (4) the release of claims; (5) an explanation of Settlement Class members' right to exclude themselves from the settlement, a date by which Settlement Class members must opt out, and information regarding how to do so; (6) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Claims Administrator; and (9) information regarding Class Counsel and the amount that Class Counsel may seek in attorneys' fees and expenses, as well as the proposed class representative service awards. *See* Fed. R. Civ. P. 23(c)(2), (e). Individuals who would like more information will also

be able to call a toll-free number for more information, and access a website regarding the settlement. (*See* Settlement Agreement, Exs. 1-3 ("Where Do I Obtain More Information?").)

The Parties have agreed to hire a respected third-party settlement administrator to handle the notice process. (Settlement Agreement ¶¶ 47-57.) The administrator will send the notices by both U.S. mail to their last known personal address, and by email to their last known personal email address (if known). (*Id.*) Addresses will be updated using available databases and services. (*Id.*) The administrator will also handle other aspects of the notice process, such as establishing a qualified settlement fund, calculating final settlement amounts and payroll tax withholdings, processing and mailing settlement checks, and issuing and processing tax forms in connection with the settlement payments. (*Id.* ¶ 36.)

## CONCLUSION

For all of the reasons set forth herein, Plaintiffs request that their Unopposed Motion for Preliminary Settlement Approval be granted in full.


Dated: October 23, 2018            **NICHOLS KASTER, PLLP**

/s/Rachhana T. Srey
Rachhana T. Srey, MN Bar No. 340133
Robert L. Schug, MN Bar No. 387013
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
srey@nka.com
schug@nka.com

**TESKE, KATZ, KITZER & ROCHEL, PLLP**

Vildan Teske, MN Bar No. 241404
Marisa C. Katz, MN Bar No. 389709
222 South Ninth Street, Suite 4050
Minneapolis, MN 55402
Phone: (612) 746-1558
Fax: (651) 846-5339
teske@tkkrlaw.com
katz@tkkrlaw.com

ATTORNEYS FOR PLAINTIFFS, THE PROPOSED
RULE 23 CLASSES, AND THOSE SIMILARLY
SITUATED